ALICE ANELL BRIGGS, ET AL V. BILLY FRANK BRIGGS, SR.

No. A-8067. Decided May 10, 1961
(346 S. W. 2d Series 106)

*Lumpkin, Watson, Dunlap & Smith,* of Amarillo, for petitioners.

*Sanders, Scott, Saunders, Brian & Humphrey and Warlick Thomas,* of Amarillo, for respondents.

MR. JUSTICE NORVELL delivered the opinion of the Court.

Alice Anell Briggs, Betty Katherine Briggs and Robert Lafayette Briggs, all minors, acting by and through their mother, Mrs. Mozelle Briggs[1] brought this suit against their father, Billy Frank Briggs, Sr. to enforce a trust established by the father for the benefit of such minor children. The trial court granted a motion for summary judgment in favor of the minors which was reversed by the Court of Civil Appeals. Billy Frank Briggs, Sr. v. Alice Anell Briggs, et al., 337 S.W. 2d 753.

The judgment of the trial court was in accordance with the terms of the written trust instrument. In order to escape being bound thereby, it was necessary that Billy Frank Briggs, Sr. avoid the trust. This he sought to do upon the grounds that it was in the nature of a contract between him and Mozelle Briggs, his divorced wife; that it was unenforceable because there was no meeting of the minds of the contracting parties; that the instrument was tainted with fraud, or was the result of accident or mistake. In our opinion, Briggs was precluded and estopped from attacking the trust instrument under which his children were beneficiaries, primarily because of the circumstance that at the time of the rendition of the summary judgment he was the guardian of the estates of the two young minor children who were beneficiaries of the trust. The judgment of the Court of Civil Appeals will be reversed and that of the trial court affirmed.

The trust indenture was executed by the respondent Billy Frank Briggs, Sr. as a part of a property settlement incident to a divorce obtained by Mozelle Briggs in June of 1958. As a part of such settlement, Briggs agreed to execute a trust instrument covering an eighty-acre farm in Oklahoma which was to provide that:

"a. The net income from the 80-acre farm shall be paid to Mozelle Briggs, or any other legal representative of the children, for the benefit of the three children until Robert [the youngest of the three children] reaches the age of 21 years, such income to be paid on or before thirty (30) days after receipt thereof.

"b. Billy Briggs shall be the trustee of the account and shall have the full right to manage, lease, operate, and look after the farm and shall have the right to borrow money

---

1. Mozelle Briggs is now and was at the time this suit was filed, the wife of W. S. Eakens. She will, however, be referred to as Mrs. Briggs in this opinion.

on the land only for the purpose of carrying out this agreement and paying off the indebtedness against the property at 1517 Fannin [a residence in Amarillo, Texas]. In the management of the farm Billy Briggs shall operate same or cause same to be operated in a good farmer-like manner so that same shall produce the maximum revenues possible and he shall not use any crop allowables on this 80-acre farm to the benefit of any other farm lands owned by the trustee, his tenants, lessors, or anyone else."

The trust instrument is in general accord with the settlement agreement. It was recited that Briggs had negotiated a loan to be placed upon the farm, but it was stipulated that said loan was not to be repaid out of the income of the farm while the trust was in existence. The trust indenture then provided that:

"It is further understood that should such loan become delinquent in either principal or interest during the term of this trust, or should any net income not be paid as herein provided, then, Mozelle Lowrie Briggs, if living or any other legal representative of the aforesaid beneficiaries shall have the right to take over the trust properties and to manage same to protect the corpus of the trust estate so that the net income may be used for the support, maintenance and education of the three beneficiaries."

With reference to the farm program of the federal government, the instrument provided that:

"The Trustee shall not permit farm allowables assigned to the lands in this trust to be used for any other farm lands owned by the Trustee, his tenants or lessees, or anyone else. All of said crops to be sold or put in government loan within ninety (90) days after completion of harvest of each crop."

It was shown that respondent had not paid over to Mozelle Briggs, as the custodian of the beneficiaries under the trust, the net income realized from the farm but had tendered only a fractional part thereof because of his assertion that under the agreement he could operate the eighty-acre farm in connection with other properties owned by him and pay over to Mozelle Briggs, as custodian, a proportionate part of the income from crops sold, government allowables and other sources of farm

income realized from the entire operation. We see no basis for this construction in the provisions of the trust indenture. It follows that under the literal terms of the indenture (unless avoided) Mozelle Briggs had "the right to take over the trust properties and to manage same in order to carry out the purposes of the trust" whenever respondent defaulted in the performance of his duties under the trust.

The terms of the trust were enforced by the trial court's judgment.

This question is presented: Was respondent in a position to attack the trust instrument? This is not a dispute over a two party contract between Billy and Mozelle Briggs. While the trust indenture had its genesis in the divorce property settlement between them, the rights of third parties are involved. The minor children of the divorced parents are real parties at interest. They are the third party beneficiaries under the trust indenture.

Respondent contended in the trial court that he and Mozelle Briggs agreed that the trust indenture should not be filed until he had completed a loan on the eighty-acre farm. His contention was that the contemplated loan was one for $7,000.00. Mozelle contended that the only loan which respondent was authorized to make against the property was for $4,700.00, that is, the amount necessary to discharge the indebtedness against the Amarillo residence. When she learned that respondent intended to obtain a larger loan on the property she caused the trust instrument to be filed for record which prevented consummation of the projected loan. It is this action on the part of Mozelle which is primarily relied upon by respondent to defeat the present suit, destroy the trust indenture and set aside the basic property settlement agreement.

Petitioners suggested a number of reasons why respondent's contentions should not be accepted, waiver and estoppel being among them. As mentioned by the Court of Civil Appeals, respondent wrote to his former wife after she had filed the trust indenture of record in Oklahoma and stated that despite her breach of the agreement, he proposed to carry it out until some future breach made it impossible for him to do so. Then, on February 11, 1959 (after the filing of the present suit on January 9, 1959), the respondent filed a verified application

with the County Court of Randall County[2] requesting that court to appoint him guardian of the estates of Betty Katherine Briggs and Robert Lafayette Briggs. In this application he affirmed the existence of the trust estate which he had created for such children by alleging that:

"This applicant would show that on June 26, 1958, a trust indenture involving income from land in Oklahoma was signed and established, entitling said minors to certain incomes from property located in Tillman County, Oklahoma, and that this Applicant is the Trustee under the terms of said trust indenture and that it is necessary, advisable and advantageous to the estates of said minor children for a guardian to be appointed to receive and administer in accordance with the law the income received from said trust instrument of record; that a full accounting may be made to the court and expenditures made only upon authorized orders signed by the Judge of the probate court, all of which reasons constitute a necessity that a guardian be appointed for the Estates of Betty Katherine Briggs and Robert Lafayette Briggs."

On the 23rd day of February 1959, respondent was appointed guardian as prayed for and duly qualified as such. On April 20, 1959, he filed an inventory and appraisement listing the following under the heading, "Personal Property":

"Income from trust: Billy Frank Briggs, Sr., by trust indenture has placed all of the North one-half (N ½) of the Northwest quarter (NW ¼) of Section No. Twenty-two (22) T4S, R16W, I.M. in Tillman County, Oklahoma, together with all improvements thereon and appurtenances thereunto, in trust for the benefit of his minor children, two-wit: Alice Anell Briggs, Betty Katherine Briggs and Robert Lafayette Briggs. This trust shall remain in effect until Robert Lafayette Briggs reaches the age of 21 years."

■ Petitioners urge that respondent's attack upon the trust indenture necessarily must fail because of the doctrine of judicial estoppel which was recently restated by this Court in Long v. Knox, 155 Tex. 581, 291 S.W. 2d 292. This argument is persuasive but there is another principle of law which is con-

---

2. The greater part of the City of Amarillo is situated in Potter County. A portion thereof, however, is situated in Randall County. The application alleged that the minors resided in Randall County.

clusive of the case when applied to the facts before us. One who stands in a fiduciary relationship to another, such as a trustee or a guardian, cannot by legal action destroy the trust or subject matter thereof so long as such fiduciary relationship remains in existence. On the date the motion for summary judgment was heard and judgment rendered, the respondent was the guardian of the estates of his two minor children who were also the beneficiaries of the trust which he had created. The acceptance of the contentions put forward by him at that time would have resulted in the destruction of the trust estate.

In Kidd v. Prince, Tex. Com. App., 215 S.W. 844, holding approved by the Supreme Court, it was said:

"It is a well-recognized doctrine at common law that a guardian cannot maintain an action against his ward pending the guardianship. Our investigation of this question shows that the authorities are uniformly in accord. In most of the decided cases the controversy appears to have arisen during the guardianship. In such cases it is clear that an action should not be maintainable on behalf of the guardian to establish a claim against his ward in any other court than that in which the guardianship is pending. But the incapacity of the guardian to maintain an action against his ward does not rest alone upon the ground that the guardianship court has exclusive jurisdiction of the subject-matter of the suit. While the cases are not numerous, we find the same principle applied to suits where the cause of action arose prior to the guardianship, in suits both for the establishment of claims and the recovery of property. The incapacity to sue arises from the nature of the relationship of the parties."

See also, Iturri v. Whitehead, 22 Tex. 556, wherein it was said by way of dicta, that, "It would seem on general principles that, after it was made apparent to the court that the plaintiff had been appointed guardian of the defendants, the suit ought to have been dismissed"; Sandoval v. Rosser, 86 Tex. 682, 26 S.W. 933, 25 Am. Jur. 97, Guardian and Ward § 157, 39 C.J.S. 297, Guardian and Ward § 169.

■ Provided the ward's legal rights are duly protected by the appointment of a guardian ad litem or the taking of some similar measure, it may be that in certain species of equitable suits, as distinguished from legal actions, a person who also occupies

the position of guardian might be permitted to individually maintain a position adverse to that of his ward, but there exists in the present case no sufficient reason why the general rule should not be applied. As above pointed out, the respondent in the guardianship proceedings asserted the validity of the trust. This was given as the basic reason for his appointment as guardian. In the present suit brought by the beneficiaries of the trust and in accordance with the provisions thereof, he seeks to avoid such trust and thus defeat petitioners' suit.

It is no answer to petitioner's insistence that the trust be carried out to say that respondent was not appointed the guarddian of his oldest child who was apparently over fourteen years of age. The trust must stand or fall as a unit. Its terms are not susceptible to a construction whereby it would be invalid as to certain beneficiaries and valid as to others. Nor, is it any answer to petitioners' contention in this regard, to say, as suggested by respondent, that the court could accept the view that respondent was unauthorized to maintain the guardianship proceedings because of a conflict of interest, and hence such proceedings would constitute no bar to his attacking the trust in the present proceedings.

At the time this suit was heard in the district court upon the motion for summary judgment, there had been no order of vacation or dismissal entered in the guardianship proceedings in Randall County. On the contrary, the order appointing respondent as guardian was subsisting and the district court was neither at liberty to ignore such order nor to treat the same as ineffective to establish the relationship of guardian and ward between him and his minor children.

As heretofore pointed out, this is not a suit in which respondent and Mozelle Briggs are the only parties involved. It is a suit for the enforcement of a trust brought on behalf of the beneficiaries thereof. Mozelle Briggs' right to sue in this case stems from the provisions of the trust indenture which authorizes her to take certain actions in the event of default by the respondent. The real parties at interest are the beneficiaries of the trust estate created by respondent and the case must be viewed from that standpoint. Because of his position as guardian, respondent is precluded from attacking the trust. Upon this ground, if for no other, the trial court's summary judgment was proper.

The judgment of the Court of Civil Appeals is reversed. The judgment of the trial court is affirmed.