[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE JUDGMENT
The plaintiff brought an action in Superior Court in which she seeks recovery for certain monies she alleges she advanced to Helen Benny from 1980 to Mrs. Benny's death in August of 1989. On July 8, 1980, Helen Benny issued and granted a general and durable power of attorney to the plaintiff. Cross was appointed Benny's guardian by Massachusetts Probate Court.
This action was commenced prior to the death of Benny. The court will discuss the relevant facts as it tries to resolve the legal issues presented.
1.
The defendant has advanced several arguments as to why the court should not consider the Cross claim and not even reach its merits.
(A)
The defendant first refers to Section 45a-363 of the general statutes which in relevant part reads as follows:
 "(a) No person who has presented a claim shall be entitled to commence suit unless and until such claim has been rejected, in whole or in part, as provided for in Section 45a-360.
 (b) Unless a person whose claim has been rejected (1) commences suit within one hundred twenty days from the date of the rejection of his claim, in whole or in part, or (2) files a timely application pursuant to section 45a-364, he [sic] shall be barred from asserting or recovering on such claim from the fiduciary, the estate of the decedent or any creditor CT Page 3185 or beneficiary of the estate, except for such part as has not been rejected."
The defendant correctly notes that pursuant to subsection (a) "no person is allowed to commence a lawsuit against a probate estate unless the claim is rejected by the estate's fiduciary pursuant to CGS Section 45a-360", (3-15-94, Trial Brief). After Mrs. Benny's death on August 17, 1989 Cross filed a Notice of Claim which was rejected by the executrix on March 28, 1990. After the claim was rejected Cross neither commenced suit within 120 days nor did she file an application with Probate Court to decide such claim pursuant to Section 45a-364.
But Cross brought suit prior to Mrs. Benny's death so the question really must be, does that suit survive her death through the application of Section 52-599 of the general statutes? Nothing in the language of § 45a-363
dictates that the initial Cross suit must be dismissed because that statute provides its own remedy or procedure for advancing claims against an estate no matter when the claim was brought in relation to death, cf Benedict v.Chase, 58 Conn. 196, 204 (1889). It would seem to be a particularly draconian interpretation of the statute to read it to require dismissal in this case because suit wasn't brought within 120 days of the rejection of the claim by the executrix of the estate when a suit was already brought advancing the same claim prior to the death of Mrs. Benny. The question really should be whether that action survives the death.
(B)
The defendant further argues that the plaintiff's action is no longer viable since it was brought against Hudon, Mrs. Benny's conservator. Mrs. Benny has died and with her death, argues the defendant, Hudon's conservatorship terminated by operation of law. Therefore, Section 52-599 cannot be used to save this action. That statute in pertinent part reads:
 "(a) A cause or right of action shall not be lost or destroyed by the death of any person but shall survive in CT Page 3186 favor of or against the executor or administrator of the deceased.
 (b) . . ., if a party plaintiff dies, defendant dies. The plaintiff, within one year after receiving written notification of the defendant's death may apply to the court in which the action is pending for an order to substitute the decedent executor or administrator in the place of the decedent and upon service and return of the order, the action may proceed."
As discussed later in this memorandum I do believe Cross could bring an action for her costs of maintenance during Benny's lifetime and since it was brought against Hudon not Benny personally it could not be barred by the application of case law that suggests a guardian cannot sue a ward personally. But Hudon was not sued in his individual capacity. The suit was brought in effect as a claim against the assets of Benny. As said in Raymond v.Bailey, 98 Conn. 201, 210 (1922).
 "This suit was against a living individual during her lifetime to collect a claim against her personally and she appeared personally and joined issue. By her death the cause of action was not lost nor destroyed nor even suspended."
Why it should make any difference for § 52-599
purposed that the original action was brought against a conservator is unclear to me. There is nothing in the statutes governing probate that make that court the exclusive forum for bringing claims against the assets of the estate in a case where suit was brought before death. The decision in Raymond v. Bailey, makes any such argument untenable since it held that the suit brought there was "not a subsequent attempt to collect a claim against the estate" id. p. 210 and therefore allowed the action to survive the death of the defendant. Perlstein v.Perlstein, 26 Conn. Sup. 257 (1966) is of no help to the defendant. Obviously Section 52-599 shouldn't apply where CT Page 3187 the very purpose of the action is defeated or rendered useless by the death of a party. But the purpose of the Cross action was to advance a claim which if successful would be satisfied against the assets of Benny. To say that Cross could have pursued the same claim in probate court after Benny's death does not mean the purpose of the prior civil action is rendered moot. It remains the same — to secure a judgment to be satisfied against the Benny assets. The fact that the probate statutes may provide an alternative remedy doesn't mean the original remedy provided by the law should be rendered nonoperative. That would seem to be a particularly bizarre result where the statutory scheme itself provides that if a claim is rejected the person has to commence suit anyway in Superior Court within 120 days (§ 45a-363). There would be an unnecessary duplication of effort and waste of court time and resources if a pending suit were held not to survive death in a situation such as this. To say that the result in this case as to survivorship of the action should be different because the original action was not brought against Benny as an individual Raymond v. Bailey, but against her conservator exalts form over substance. As I shall discuss Cross might have been forestalled from bringing an action against Benny individually but the suit was brought against Hudon as a conservator and as conclude later in this decision such an action is permissible. But these peculiarities of guardianship law have nothing to do with the fact relevant to jurisdiction that a judgment in favor of Cross here will be satisfied against Benny's assets just as any judgment would have been satisfied if a suit had been brought pursuant to § 45a-363(b)(1) after her death.
(C)
The defendant also maintains that Hudon was correct in denying the Cross claim as conservator because to satisfy it he would have had to liquidate Benny's estate without Probate Court approval. It is true that Probate Court does appoint the conservator who is entrusted with the care and management of the ward's estate.
From all of this the defendant deduces that Cross had no cause of action in Superior Court in the first place and the only place for her to assert her claim would have been CT Page 3188 in the probate court. The statutes dealing with conservatorship, § 45a-644 et seq., don't require or even allude to the possibility of such an exclusive procedure. No claims procedure analogous to claims against a decedent's estate is provided for in the statutes and I'm reluctant to give an interpretation to a statutory scheme that would seem to give a claimant more right to bring an action in Superior Court post-death (§ 45a-363(b)(1)) than it does to a claimant advancing a claim prior to a ward's death where a conservator has been appointed. As the plaintiff points out Hudon as agent of Probate Court was appointed to protect the Benny's assets. Upon suit against his ward he had the responsibility to defend the ward's estate. If he felt settlement was advisable he was the one who had to secure Probate Court approval for any settlement. The bringing of the suit was the mechanism by which Cross in effect initiated her claim against the assets and if a judgment was secured prior to Benny's death Hudon acting as Probate Court agent would have had to satisfy that judgment from the assets he had under his control. Probate Court administering a ward's assets through conservatorship does not fill the role of some type of administrative agency to which a claimant must bring its claims first let alone exclusively before a party having a claim brings an action in Superior Court. I'm not aware of any exhaustion doctrine that can be read into the statutory scheme.
2.
Turning to the actual merits of the Cross claim the court feels it should first make certain observations on the procedural setting of the case. The plaintiff filed this suit while Mrs. Benny was alive and while the plaintiff was guardian for her mother, Mrs. Benny. Mrs. Cross was appointed guardian by the Massachusetts probate court in June 1988.
The plaintiff brought suit against Paul Hudon who had been appointed ancillary conservator of real estate belonging to Mrs. Benny and Mr. Hudon at the time suit was brought held legal and record title to the property.
The plaintiff and defendant in their briefs set forth apparently conflicting principles of law which as stated CT Page 3189 seem irreconcilable.
Although there are no Connecticut cases on point the defendant refers to a general rule noted in 39 Am.Jur.2d in the article on "Guardian Ward" at § 160, page 123:
 "It is a firmly established general rule that an action at common law cannot be maintained between a guardian and a ward while that relation exists. The character of the relation, the capacity in which the guardian acts, and his [sic] duty to the ward's property ordinarily forbid that he [sic] occupy the distinctly adverse position of suitor . . . ."
Several cases are cited to support this proposition,McLane v. Curran, 133 Mass. 531 (1882), Davis v. Davis,99 So. 637 (Miss, 1924), Briggs v. Briggs, 346 S.W.2d 106
(Tex. 1964), Clarke v. Hickman, 307 F.2d 660 (C.A.D.C. 1962).
The plaintiff cites cases which at first might appear to conflict with the just stated general principle. It has been held that a guardian is entitled to be reimbursed for reasonable expenses he or she makes for the maintenance of the ward, cf Mills v. St. John et ux, 2 Root 188 (1795),Benedict v. Chase, 58 Conn. 196 (1889), Hewitt,Administrator v. Beattie et als, 106 Conn. 602 (1927),Palmer v. Hartford National Bank Trust Co., 160 Conn. 415
(1971). Also see 39 Am.Jur.2d at § 181 page 138. The conflict is more apparent than real between the two principles advanced by each side in this case.
If we look at the Davis, McLane, and Briggs cases cited by the defendant they involved actions brought by the guardian directly against the ward while the guardian still had control and management of the ward's estate. Any judgment would have to be satisfied out of the very estate of the ward which the guardian had to manage. In Clarke v.Hickman the guardian bringing suit there also managed the estate's property while bringing suit. The chances for conflict are obvious and to protect the competing equities the Clarke court held the statute of limitations does not CT Page 3190 begin to run against a guardian who extends assistance to his or her ward until a final accounting of the estate.
Cases speaking in general terms about the right of a guardian to seek reimbursement for costs of maintenance and meeting the needs of the ward seem to involve situations where the guardian no longer has control over the actual estate of the ward; see cases cited above, Am Jur article discussed issue in terms of guardian making claim in final accounting procedure.
In this case the reason for the general rule barring a guardian from bringing an action for costs of maintenance doesn't apply. Certainly Cross was the guardian while the expenses were incurred. Hudon was the conservator and as such stood in Benny's stead when Cross brought suit. But the point is that Hudon had complete control over the only assets available to satisfy the claim, real estate, when suit was brought. Cross's status as guardian in the context of this claim is thus irrelevant; she was not a "guardian" of the assets of the estate at the time she pressed her claim for reimbursement of expenses she incurred while acting as guardian. Cross had no power or control over the "estate" of Benny at that point so in that sense she was not managing it for the benefit of Benny. The possibility of conflict and double dealing that lie behind the general rule referred to by the defendant are not operative so why shouldn't someone with a claim be able to advance it? More importantly why should a court in a situation such as exists here woodenly follow a rule of law not adapted to the problem before it which would have the effect of discouraging relative guardians with no control over the ward's assets from advancing money to support a parent in a home for the elderly? Under the circumstances of this particular case I do not believe the plaintiff's status as a guardian per order of an out of state court prevented her from bringing this action against a conservator of the guardian who because of that status, conferred by a Connecticut court, had complete control of the ward's only assets at the time suit was brought.
The court believes it can address the merits of the plaintiff's claim. What are the theories of recovery that can be gathered from a reading of the amended complaint? Several theories appear to be advanced. There is a CT Page 3191 contract theory, a theory of implied contract, an unjust enrichment theory which is closely related to an equitable claim that having advanced money for the care of her ward the plaintiff should not be prevented from making a claim against the ward's assets.
There is not any basis in the record to advance a contract claim here. Mrs. Benny was hardly in a condition to enter into a contractual arrangement for her support. Upon being asked during cross-examination whether Mrs. Benny agreed to pay her back for the monies spent for her maintenance, Mrs. Cross could only say "not in so many words." I can't find the necessary requisites for contract formation here and in its post-trial brief the plaintiff does not appear to argue a contract theory.
As to the theory of implied contract it was set forth in an older case, Collins v. Lewis, 111 Conn. 299, 304
(1930).
 "implied contract can only exist when there is no express one. It is one which is inferred from the conduct the parties though not expressed in words. Such a contract arises where a plaintiff, without being requested to do so, renders services under circumstances indicating that he expects to be paid therefor, and the defendant, knowing such circumstances, avails himself of the benefit of those services. In such a case, the law implies from the circumstances, a promise by the defendant to pay the plaintiff what those services are reasonably worth."
Also see Freda v. Smith, 142 Conn. 126, 134 (1955).
I can't say from the facts proven here that Mrs. Benny availed herself of the monies advanced by Cross knowing that her daughter expected to be repaid or as a reasonable person should have known that under the circumstances the plaintiff expected repayment. An implied contract in fact is said to arise from a "mutual agreement and intent to CT Page 3192 promise when the agreement and promise have simply not been expressed in words," Williston on Contracts 4th ed., Vol. 1, § 1.6. No such mutual agreement was shown here for the probable reason that Mrs. Benny's condition precluded such an underlying mutual agreement.
However, the courts have created quasi contractual theories of recovery sometimes saying recovery in certain situations is based on a theory of unjust enrichment or that a contract will be implied in law; "quasi contractual obligations are imposed by the courts for the purpose of bringing about a just result without reference to the intention of the parties," Williston at § 1.7. See for example Bailey v. Bussing, supra at page 462.
Mrs. Cross paid maintenance costs for her ward which the ward would have otherwise been obligated to pay. As cases previously referred to indicate the guardian is entitled to be reimbursed for such expenditures. Two cases regard such claims as equitable in nature, Benedict v.Chase, 58 Conn. at p. 205, Palmer v. Hartford National Bank Trust Co., 160 Conn. at page 420. All unjust enrichment cases are regarded as equitable in nature, National CSSInc. v. Stamford, 195 Conn. at p. 597. But whether such recoveries are regarded as a sub-category of unjust enrichment or just allowed without a specific statement of the theory, cf Hewitt v. Beattie, such claims are in fact permitted.
The question remains as to whether in this case Mrs. Cross has established her claims for the expenses of maintenance. The first issue presented under this topic is what standard of proof should apply. The defendant citesYantz v. Dyer, 120 Conn. 600 (1935). That case sets forth a rule which requires clear and satisfactory proof as regards claims or services to a decedent but at page 603 the court said the following:
 The basis of the rule which requires clear and satisfactory proof as regards claims for services to a decedent, made after his death, at least where the claimant is not related to or a member of the family of the decedent, has been stated by us CT Page 3193 as follows: "Its reason lies in the fact that the living claimant occupies a position of great advantage by reason of the death of the other party to the transaction and it is necessary to provide a check against possible imposition and fraud." (emphasis added)
I'm not sure this rule would even apply as against a claim by the plaintiff daughter. In any event as regards the payments to maintain Mrs. Benny at the nursing home there has been no serious question raised by the defendant here that the payments were not made or that it was not in Mrs. Benny's interest or to her benefit that the payments to keep her in the nursing home cover medical expenses or maintain Mrs. Benny's property were not to her benefit. The plaintiff introduced into evidence numerous bills from the nursing home and reflecting the costs of maintaining the property that appear to be in excess even of the amount claimed by the plaintiff. There is no indication that the personal assets the plaintiff alleges she expended didn't in fact go to the payment of these bills.
Even a clear and convincing evidence standard of proof would warrant the court in concluding that the $157,000 of listed checks in Exhibit E and the three checks in Exhibit F not listed in E totaling $13,546.65 were spent for the maintenance of Mrs. Benny. I have difficulty, however, in concluding in light of the evidence presented that even by a preponderance of the evidence standard that the additional $14,000 expended by Cross was spent for the maintenance and support of Mrs. Benny as opposed to defending her personal role as guardian. Not much detailed evidence was presented in fact as to the nature and purposes of these expenditures.
The only basis on which the Cross claim could be rejected would be on a finding that here monetary contributions were made with a donative intent. The intent of Cross in making these contributions is a question of fact, Halisey v. Howard, 148 Conn. 466, 469 (1901). Every time she deposited her check into the account to pay Benny's expenses the plaintiff wrote on the check that it was a loan. She filed no gift tax forms. She was aware CT Page 3194 that property was available to perhaps satisfy any claim she had. Whether absent the latter consideration she would have supported her mother in the manner she did in any event doesn't remove it as a factor. This is especially so since Mrs. Cross in her testimony did allude to the fact that she paid the expenses since the family couldn't agree that they be shared.
It is difficult to find a donative intent when over a course of years the alleged gift giver writes on each check purportedly representing the gift that it in fact it was a loan.
Judgment is awarded to the plaintiff in the amount of $170,546.35.
Corradino, J.