Charles McIntyre HADEN, Jr., Individually, and Charles McIntyre Haden, Jr. & Company d/b/a Haden & Company, Appellants

v.

DAVID J. SACKS, P.C. d/b/a Sacks & Associates, Appellee.

Nos. 01–01–00200–CV, 01–03–00025–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 8, 2007.

Brian D. Womac, Womac & Associates, Richard N. Countiss, Countiss Law Firm, Houston, for Appellants.

David J. Sacks, Sacks Law Firm, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION ON MOTION FOR REHEARING

SHERRY RADACK, Chief Justice.

Appellants, Charles M. Haden, Jr., individually (Haden), and Charles McIntyre Haden, Jr. & Company d/b/a Haden & Company (the company),[1] have filed motions for rehearing and for en banc reconsideration of our opinions issued on September 7, 2006, and appellee, David J. Sacks, P.C. (Sacks) d/b/a Sacks & Associates (the law firm) has filed responses to both motions. We grant rehearing, withdraw our opinions and judgments of September 7, 2006, and issue this opinion in their stead.[2]

These appeals derive from a dispute over whether and how a client agreed to pay a law firm for legal services. In Cause No. 01–01–00200–CV, the company challenges a series of interlocutory summary judgments and a final judgment rendered in favor of the law firm. In three issues, the company contends that the law firm did not establish its entitlement to judgment as a matter of law (1) for breach of a contract to pay $30,314.38 for legal services performed, (2) for $120,887.50 in attorney's fees awarded the law firm in connection with pursuing the breach of

---

1. We refer to appellants jointly as "the company."

2. Because we have granted rehearing and issue this opinion, the motions for en banc reconsideration in Cause Nos. 01–01–00200–CV and 01–03–00025–CV are rendered moot. *Brookshire Brothers, Inc. v. Smith,* 176 S.W.3d 30, 41 n. 2 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (supp. op. on rehearing).

contract claim, or (3) on the company's counterclaims for violations of the Deceptive Trade Practices and Consumer Protection Act (DTPA),[3] breach of fiduciary duty, breach of contract, and fraud. We affirm the judgment in Cause No. 01–01–00200–CV in part and reverse and remand in part. Our disposition of Cause No. 01–01–00200–CV compels that we also reverse the judgment in Cause No. 01–03–00025–CV.

### Factual Background

Haden and his predecessor company had an appeal pending to the United States Court of Appeals for the Fifth Federal Circuit (the Fifth Circuit) from an adverse judgment rendered in the United States District Court for the Southern District of Texas, Houston Division. That controversy involved a commercial landlord-tenant dispute and resulted in an adverse judgment that not only assessed liability against the company, but also eliminated the company's counterclaims. Trial counsel who represented the company in the federal case had prepared a preliminary draft of an appellate brief when Sacks and Haden discussed the merits of hiring independent appellate counsel for the appeal instead of relying on trial counsel. As a result of the conversation, the company hired Sacks and his law firm for the appeal. Sacks is board certified in civil appellate law by the Texas Board of Legal Specialization.

The parties began their working relationship through a written engagement letter sent from the law firm and dated August 4, 1997. The letter, in its entirety, states as follows:

> I am honored to represent you with regard to the above-referenced matter. At this point, you have requested that I assist with the writing of the Appellant's Brief and any reply. If oral arguments

are granted by the Fifth Circuit, a decision will have to be made on who should argue the case.

> My normal rate is $300.00 per hour, but my rate for this particular matter will be $200.00 per hour. The other lawyers in my firm range from $150.00 to $200.00 per hour, and paralegals range from $50.00 to $100.00 per hour. You are responsible for all costs and expenses in the case as incurred. These expenses include, but are not limited to, copies; binding; fax transmissions; travel; lodging; parking; etc.

> Please submit a $10,000 retainer to be applied to fees and expenses.

> Please sign in the space provided below and return the original to my office as soon as possible.

> Thank you for your cooperation and attention.

Sacks's signature appears at the close of the letter. Below Sacks's signature is the statement, "Your signature below indicates acceptance of the terms of this fee agreement." The face of this letter shows that, on endorsing it, individually and as president of the company on August 21, 1997 and returning it to the law firm, Haden had altered the original $10,000 amount proposed by striking through that amount, superscripting the amount of $5,000 over the original typewritten numerals in handwriting, and adding his initials beside that change.

In addition to endorsing the law firm's letter, Haden, again individually and on behalf of the company, forwarded a check for the $5,000 retainer by an August 21, 1997 letter, which stated the following:

> Pursuant to our telephone conversation, enclosed herewith is a check in the amount of five thousand dollars ($5,000) to be applied to fees and expenses in

---

**3.** Tex. Bus. & Com.Code Ann. § 17.41–.854 (Vernon 2002 & Supp.2005).

assisting with the writing of the Appellants' Brief and reply. Also enclosed is an executed copy of your August 4, 1997 letter indicating that I have acknowledged acceptance of your fee agreement on behalf of Haden & Company and myself, except that the initial retainer amount has been reduced to $5,000 per our agreement. Thank you for your assistance in this matter. I look forward to reading your appellant [sic] brief.

The law firm filed the 48–page brief with the Fifth Circuit on September 10, 1997. The brief sought a remand on the merits and a new trial for Haden's and the company's counterclaims.

On September 15, 1997, the law firm finalized its invoice for work on the brief at a total due of $37,259.71. The invoice reflected 28 hours' work by Sacks, 161.75 hours' work by an associate, and 37 hours' work by a paralegal, as well as expenses and disbursements. On the same day, Sacks wrote to Haden concerning the brief and forwarded the invoice. Concerning the brief and the invoice, Sacks's letter states,

I hope you are happy with the Brief. There is an enormous amount of blood, sweat, and tears that went into it. I think it gives us the best possible chance of getting your case turned around.

In that regard, given the state of the record that we were eventually able to retrieve from the Court, putting together winning arguments took considerable [sic] more time than I anticipated after giving the cursory review of the initial documents. I have attached our bill for service rendered and expenses incurred through the completion of the Brief.

We are committed to excellence and will generally spend whatever time is necessary to develop a winning brief given the state of the record. Some-

times that gets a little more expensive than anticipated.

If you can take care of this bill within the next thirty (30) days, I will agree to do the work we have done so far for a flat fee of $30,000. With your $5,000, the balance due would be $25,000.

On November 24, 1997, an associate of the law firm sent a letter to Haden, along with a copy of the opponent's appellee's brief. The letter stated, as follows:

Please find enclosed for your review a copy of the Brief of Appellee. A reply brief must be filed no later than Tuesday, December 2, 1997. If you are interested in having our firm submit a reply brief, you must contact me as soon as possible; otherwise, I will presume you do not wish to submit a reply brief.

I look forward to hearing from you.

The law firm filed the reply brief on December 4, 1997.

On December 17, 1997, the law firm sent an invoice reflecting an outstanding debt of $32,259.71 for the initial brief. The total was the amount due after the $5,000 retainer was credited against the original debt of $37,259.71. This invoice also included an additional $3,045 fee for work done by the law firm to prepare the reply brief. The total outstanding balance shown due on the invoice was $35,304.71.

The company paid $5,000 to the law firm by a check dated December 31, 1997, which the law firm deposited in its account on January 13, 1998. On March 17, 1998, when only the $5,000 retainer and the additional $5,000 had been paid, and the outstanding balance due was $30,314.38, Sacks sent a letter to Haden. The complete text of the letter follows:

Dear Charles:

In November you told me that you were going to start paying $5,000.00 a month. I did receive December's pay-

ment sometime in January, but I have received nothing for January, February, or March. A few weeks ago when we spoke, you reassured me that you were going to resume paying on this account. I had the impression that the first payment would be within a few days, but nothing has been received. I have tried to work with you over the last seven months or so, but it does not appear that any consistent effort is being made to pay this bill.

If you really do not intend to pay for my services, please let me know, and we can deal with that accordingly. Otherwise, I am interested in hearing your plan for payment. It needs to be some firm consistent schedule that pays this off in a reasonably short period of time. In any event, prior to oral arguments before the Fifth Circuit.

Please let me know how you wish to proceed.

On September 9, 1998, the Fifth Circuit issued an 18–page, unpublished opinion in Haden's and the predecessor company's appeal. The disposition affirmed the adverse judgment of $66,363.03 that had been rendered as a matter of law against Haden and the predecessor company, but also granted them partially favorable relief by vacating dismissal of their promissory-estoppel counterclaim and remanding those claims for trial.

Eleven months later, on August 2, 1999, Sacks sent the following demand letter, by certified mail, return receipt requested, to Haden and the company:

Dear Charles:

As you are aware, your account with my firm is over nineteen (19) months past due, with a current outstanding balance of $30,314.38. Please send me, at the [letterhead] address, the full amount due and unpaid by cashier's check or money order. Your cashier's check or money order should be made payable to David J. Sacks, P.C.

If I have not received payment from you within thirty (30) days after your receipt of this letter, I will take all legal actions necessary to collect this debt. The lawsuit will seek court costs, legal interest and attorney's fees in addition to the amount of the debt.

On August 27 and September 1, 1999, respectively, Haden and Sacks exchanged the lengthy, four-page, single-spaced letters that precipitated this lawsuit. In his letter of August 27, Haden contested the total amount of fees owed to the law firm on several grounds, including the following: the law firm had initially been hired to review a brief drafted by trial counsel and "to assist," as stated in the firm's August 4, 1997 letter; Haden had "made it clear" that $5,000 was all he could afford to spend and that spending more made little sense; the law firm had "never advised" that it was "substantially exceeding the retainer amount," and its "cost over-runs were clearly different that [sic] what both of us anticipated in what your fee would be," which precluded Haden from either approving the cost revisions or terminating the firm's work; that the fees charged for the work on the brief and Sacks' participation in the work differed significantly from Haden's understandings; Haden made no promises to the law firm to induce the law firm to prepare a reply brief to the Fifth Circuit, except for the additional $5,000 paid after that brief was filed; and the "only way" that payment of more than the $10,000 already paid would be as a result of a reversal and remand by the Fifth Circuit and a statutory award of attorney's fees on prevailing in the district court after the remand.

Sacks's reply of September 1, 1999, in which he accused Haden of fabrication and misstatements, included the following

statements: Sacks denied not discussing the additional work required with Haden and stated that he had, in fact, explained that the additional cost to rewrite trial counsel's brief "probably be between $25,000 and $40,000," which Haden had authorized; Haden had promised to begin to pay the law firm $5,000 monthly until the bill was paid; Haden did not respond to the law firm's February and March letters regarding these monthly payments; Sacks refused to travel to New Orleans for oral argument in the case because the company had not paid its bill; Sacks kept Haden apprised of both status and costs as the case progressed; Sacks disagreed that Haden had "ever state[d] that [he] had only $5,000 to spend on the case," and stated that the law firm would never have accepted the case if that were true; and Haden knew that "reviewing the all the materials and assisting with editing" trial counsel's brief "would cost at least $10,000."

After this exchange of correspondence, the law firm filed this lawsuit on September 22, 1999.

### Procedural Background

The law firm's live pleadings asserted claims for (1) "suit on sworn account" by claiming that the company accepted the services and became bound to pay the law firm on an open account, *see* TEX.R. CIV. P. 185 (authorizing evidence of open account for "personal services rendered" (among other claims) to serve as "prima facie evidence of amount due," if supported by proper affidavit stating that claim is "just and true," due, and that "all just and lawful offsets, payments, and credits have been allowed."), (2) breach of contract, (3) quantum meruit, and (4) DTPA violations for counterclaims later filed against the law firm. The company answered the pe-

tition and asserted its own counterclaims against the law firm for fraud, DTPA violations, unconscionable course of action, breach of contract, and breach of fiduciary duty.

The law firm sought traditional and no-evidence summary judgment on the company's counterclaims. The company's response to the motion for summary judgment included a challenge to the affidavit by Sacks that had been attached to the law firm's motion. The company also offered Haden's affidavit and other evidentiary exhibits. In addition to responding on the merits, the law firm's reply included an amended, extensively detailed affidavit executed by Sacks.

On May 11, 2000, the trial court rendered a preliminary take-nothing summary judgment in favor of the law firm on the company's counterclaims for unconscionable action, fraud, and violations of the DTPA. On June 5, 2000, the trial court rendered an additional preliminary take-nothing summary judgment on the company's counterclaims for breach of fiduciary duty and breach of contract.[4]

The law firm had also sought traditional and no-evidence summary judgment for its breach of contract claim by asserting its right to judgment as a matter of law for unpaid attorney's fees amounting to $30,314.38, pursuant to section 38.001 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001–.006 (Vernon 1997). The law firm's motion asserted that its contract with the company was valid as a matter of law, that the law firm had performed under the contract, that the company had breached the contract, and that the law firm suffered damages as a result of the breach. The contract, according to the law firm, was

---

4. Haden and the company then sought to recuse the trial court, but did not succeed.

This ruling has not been challenged on appeal.

that "Haden agreed to pay the Lawfirm [sic] on an hourly basis for services rendered" and that "Haden was responsible for all costs and expenses in the case as incurred."

The law firm attached the following exhibits to this motion for summary judgment: correspondence, described more fully above, dated August 4, 1997, August 20, 1997, November 24, 1997, March 17, 1998, and August 2, 1999; Sacks's affidavit; copies of checks from Haden, for $5,000, dated August 21, 1997, and for $5,000, dated December 31, 1997; a copy of the appellant's brief and reply brief prepared by the law firm for the company's appeal to the Fifth Circuit, with that court's resulting order; and invoices for the billing by the law firm. The summary judgment motion pertained only to the law firm's breach of contract claim and did not assert any contentions regarding the law firm's alternative claims for "suit on sworn account," quantum meruit, or alleged DTPA violations for bringing DTPA counterclaims against the law firm.

Haden's and the company's response to the law firm's motion for summary judgment disputed that any agreement existed for the law firm to prepare a brief for the appeal to the Fifth Circuit because, according to Haden, his trial counsel had already prepared a brief, and Haden had hired the law firm merely to review trial counsel's draft. The response also asserted that Haden had agreed only to a flat, maximum fee of up to $10,000 for the law firm's services and also asserted several affirmative defenses.

The company's response included the following attachments: (1) Haden's affidavit, in which he stated that he had hired Sacks to "put an edge on my trial lawyer's brief" and therefore "assist in the preparation" of the brief for a fee that "could be as high as $10,000"; (2) an excerpt from Sacks's oral deposition testimony, showing that Sacks stated that the parties had not agreed to a "specified number" for the work done by the law firm and that Sacks had given Haden a range of from $15,000 to $50,000 as a possible fee; (3) a letter from Haden to Sacks dated August 27, 1999; (4) a letter from Sacks to Haden dated September 1, 1999; and (5) an affidavit disputing the reasonableness of the attorney's fees sought by the law firm for the breach of contract claim.

The law firm replied to the company's response to its motion for summary judgment by stating that the agreement was not, as a matter of law, ambiguous and, therefore, that Haden's affidavit testimony concerning an agreement to a flat fee that was capped at $10,000 was inadmissible because the statements in the affidavit violated the parol evidence rule. In addition, the law firm also argued that all of the company's affirmative defenses to the law firm's breach of contract claim necessarily failed because the company retained and accepted the benefits of the contract and had also ratified the contract. According to the law firm, Haden received all of the invoices relating to the services performed by the law firm, which showed the type of legal services and the amount billed for the legal services by the law firm, requested that the law firm prepare a reply brief, and then made a $5,000 payment. The law firm contends, therefore, that Haden ratified the contract by making a single payment on the final invoice and by requesting that a reply brief be prepared by the law firm after receiving the invoice for the work performed on the initial appellant's brief.

The trial court rendered an interlocutory summary judgment in favor of the law firm on its breach-of-contract claims for $30,314.38, plus interest. The trial court also ruled that the law firm was entitled to attorney's fees expended in pursuing the

contract claim, but reserved ruling on the amount of reasonable attorney's fees.

Two months later, the law firm sought a traditional summary judgment against the company on the reasonableness of the attorney's fees incurred in seeking the summary judgment on its breach-of-contract claim. The trial court then rendered a final judgment, which incorporated the earlier ruling on the contract, and awarded the law firm an additional $75,887.50 for attorney's fees incurred in pursuing the contract claim, with contingent fees totaling $45,000 for appeals to an intermediate appellate court and for seeking a petition for review in the supreme court. The first paragraph of the judgment recites that Haden and the company filed no response to the law firm's motion concerning the issue of the attorney's fees in connection with pursuit of the contract claim. Haden and the company challenge this judgment in Cause No. 01–01–00200–CV, which also includes the trial court's orders granting summary judgment in favor of the law firm on the company's counterclaims.

Haden and the company did not supersede the judgment challenged in Cause No. 01–01–00200–CV, which prompted postjudgment collection and enforcement procedures. These culminated in the law firm's obtaining turnover relief, for which the firm sought attorney's fees pursuant to section 31.002(e) of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(e) (Vernon Supp.2005). The law firm again prevailed and recovered a judgment for $90,000 in attorney's fees. Haden and the company challenge that judgment in Cause No. 01–03–00025–CV.

### Standard of Review

We review summary judgments de novo, *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005), and follow the usual standards that apply when a summary judgment order grants relief without specifying grounds. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001); *Stephens v. Dolcefino,* 126 S.W.3d 120, 125–26 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). We consider all summary judgment grounds on which the trial court rules and that the appealing party preserves for appellate review and are necessary for final disposition of the appeal. *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996).

The law firm moved for summary judgment under two authorizing rules, rule 166a(c) ("traditional" summary judgment) and 166a(i) ("no-evidence" summary judgment). *See* TEX.R. CIV. P. 166a(c),(i). For its breach of contract claims, the law firm moved for traditional summary judgment under rule 166a(c). For Haden's and the company's counterclaims, the law firm sought both a traditional summary judgment and a no-evidence summary judgment under rule 166a(i). We apply the standard of review appropriate for each type of summary judgment. *See Flame-out Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex. App.-Houston [1st Dist.] 1999, no pet.) (166a(i) no evidence standard); *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997) (166a(c) traditional standard).

### Breach of Contract

Haden's and the company's second issue challenges the traditional summary judgment rendered in favor of the law firm on its claim that the company breached its contract with the law firm. The law firm defends the trial court's ruling by claiming that it established its right to prevail as a matter of law for unpaid legal fees and expenses in the amount of $30,314.38, and that the company offered no properly admissible summary judgment evidence to dispute that right. We disagree.

The law firm moved for summary judgment based on its August 4, 1997 engagement letter and on Haden's and the company's having endorsed the letter and supplied the $5,000 retainer required by that letter. The law firm argued that these documents established that Haden and the company had agreed to pay the law firm on an hourly basis for services rendered in connection with the Fifth Circuit appeal and that (1) the law firm had a valid contract with the company, (2) the law firm had performed under the contract, and (3) the company breached the contract, which resulted in damages. The law firm provided documentary evidence showing that the firm was paid an agreed $5,000 retainer, completed the work, sent an invoice, filed a reply brief, sent another invoice, received another $5,000 toward the unpaid balance, formally demanded the outstanding balance of $30,314.38, and filed suit when the balance remained unpaid.

Haden and the company challenged the law firm's right to summary judgment based in part on an affidavit by Haden. In the affidavit, Haden stated that, in entering into the agreement by endorsing the law firm's August 4, 1997 engagement letter on August 21, 1997 and paying the $5,000 retainer fee, he relied on Sacks's "representation that the work would cost as much as $10,000." The law firm rejected that assertion as untenable, in part by emphasizing that Haden and the company had already received the firm's initial invoice for $37,259.71 before the law firm filed the reply brief in the Fifth Circuit case.

In response, Haden averred that he had never agreed to pay more than $10,000 for the law firm's work. In addition, Haden and the company offered evidentiary exhibits that included the correspondence by which the law firm forwarded its initial, $37,259.71 invoice for the work on Haden's and the predecessor company's principal brief. In that correspondence, which appears in full above, Sacks acknowledged that the work on the brief was "a little more expensive than anticipated" because "putting together winning arguments took considerable [sic] more time than I anticipated after giving the cursory review of the initial documents." In the same letter, Sacks offered to reduce the outstanding balance by approximately $5,000 if the invoice were paid in full within 30 days.

The law firm responded by contending that Haden's and the company's summary judgment evidence, in particular, Haden's affidavit, contravened the parol evidence rule and was therefore inadmissible to vary the terms of the August 4, 1997 written contract, which had been accepted in full on August 21, 1997, on payment of the $5,000 retainer fee. The law firm brings the same challenge in response to Haden's and the company's second issue on appeal.

## A. Whether the Parties' Minds Met

■ Parties form a binding contract when the following elements are present: (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Am. Nat'l Ins. Co. v. Warnock*, 131 Tex. 457, 114 S.W.2d 1161, 1164 (1938); *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

■ To be enforceable, the contract must be sufficiently certain to enable a court to determine the rights and responsibilities of the respective parties. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992); *America's Favorite Chicken v. Samaras*, 929 S.W.2d 617, 622 (Tex.App.-San Antonio 1996, writ

denied). Under settled principles of contract interpretation, we construe a contract as a matter of law to determine whether it can be enforced as written without resorting to parol evidence. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003). Our primary concern is to ascertain the intent of the parties, as expressed in the contract instrument. *Id.* (citing *R.P. Enters. v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980)).

■ In asserting its right to summary judgment as a matter of law on its claim for breach of contract, the law firm relied on the following premise: the parties contemplated billing on an open account basis, at the rates and with client-payment of expenses referred to in the engagement-letter contract, as evidenced by Haden's endorsing that letter and paying the $5,000 retainer fee also referred to in the letter.

The engagement-letter contract does not support the law firm's interpretation. Though the law firm's verified pleadings initially sought recovery on an "open" or sworn-account, as authorized by rule 185,[5] Haden's and the company's sworn denial disputed the sworn-account theory. More importantly, the law firm did not rely on that theory in moving for summary judgment.

On construing the engagement-letter contract, as acknowledged by Haden and the company, we conclude that it binds the parties to the following terms: (1) the law firm would represent Haden and the company by providing professional assistance with their appellate brief to the Fifth Circuit, (2) Haden, both individually and for the company, acknowledged the law firm's rates and responsibility for the law firm's disbursed expenses, and (3) a $5,000 retainer fee instead of a $10,000 retainer fee

would apply. The engagement-letter contract does not bind Sacks or the law firm to do work representing a value in fees of $37,000—or any amount—except the $5,000 retainer fee. Similarly, the engagement-letter contract does not bind Haden and the company to pay any amount except the retainer fee. On the critical issue of potential fees owed, the letter simply acknowledges differing rates for differing levels of staff input.

■ We do not agree that the engagement-letter contract acknowledges Haden's and the company's agreement to (1) pay billing *as accrued* at (2) the hourly rates acknowledged in the engagement-letter contract. To acknowledge an hourly rate is not necessarily to acknowledge open account billing at that hourly rate. Accordingly, whether the minds of the parties "met" on the crucial obligation, which the law firm vigorously contends is imposed by the engagement-letter contract, but which Haden and the company dispute with equal vigor—legal fees representing approximately $37,000 of work and the attending obligation to pay that amount—are questions of fact that a jury must decide. *See Foreca, S.A. v. GRD Dev. Co.,* 758 S.W.2d 744, 746 (Tex.1988).

## B. The Law of Parol Evidence

As in the trial court, however, the law firm counters that the parol-evidence rule does not permit Haden and the company to assert their flat, or maximum $10,000, fee theory because it alters the acknowledged terms of the law firm's engagement-letter contract, in violation of the parol evidence rule.

---

5. Tex.R. Civ. P. 185 (authorizing evidence of open account for "personal services rendered" (among other claims) to serve as "prima facie evidence of amount due," if supported by proper affidavit stating that claim is "just and true," due, and that "all just and lawful offsets, payments, and credits have been allowed.")

The parol evidence rule is a rule of substantive law. *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 31 (1958); *Gonzalez v. United Bd. of Carpenters & Joiners,* 93 S.W.3d 208, 211 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Piper, Stiles & Ladd v. Fid. & Dep. Co.,* 435 S.W.2d 934, 940 (Tex.Civ.App.-Houston [1st Dist.] 1968, writ ref'd n.r.e.). When parties reduce an agreement to writing, the law of parol evidence presumes, in the absence of fraud, accident, or mistake, that any prior or contemporaneous oral or written agreements are merged into the final, written agreement and, therefore, that any provisions not set out in the writing were either abandoned before execution of the agreement or, alternatively, were never made and are thus excluded from consideration in interpreting the written agreement. *See Hubacek,* 317 S.W.2d at 31; *Smith v. Smith,* 794 S.W.2d 823, 827 (Tex.App.-Dallas 1990, no writ); *Muhm v. Davis,* 580 S.W.2d 98, 101 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.).

We review parol evidence questions de novo, as questions of law. *City of Pasadena v. Gennedy,* 125 S.W.3d 687, 691 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). Evidence that violates the parol evidence rule has no legal effect and "merely constitutes proof of facts that are immaterial and inoperative." *Piper, Stiles & Ladd,* 435 S.W.2d at 940. Because all prior negotiations and agreements are presumed merged into the final agreement, parol evidence is not admissible to vary, alter, or supplement the terms of an otherwise unambiguous contract except to show (1) that the contract was induced by fraud, accident, or mistake, (2) that an agreement was to become effective only upon certain contingencies, or (3) in the case of ambiguity, that the parties' true intentions differ from those expressed in the agreement. *See Messer v. Johnson,* 422 S.W.2d 908, 912 (Tex.1968); *Gonzalez,* 93 S.W.3d at

211; *Litton v. Hanley,* 823 S.W.2d 428, 430 (Tex.App.-Houston [1st Dist.] 1992, no writ).

But, parol evidence may also be admissible, under an additional exception, to show collateral, contemporaneous agreements that are consistent with the underlying agreement to be construed. *See Hubacek,* 317 S.W.2d at 31; *see also Transit Enter., Inc. v. Addicks Tire & Auto Supply, Inc.,* 725 S.W.2d 459, 461 (Tex.App.-Houston [1st Dist.] 1987, no writ) (applying exception for collateral, consistent, contemporaneous agreements); *Sherrod v. Bailey,* 580 S.W.2d 24, 29 (Tex.Civ.App.-Houston [1st Dist.] 1979, writ ref'd n.r.e.) (same). This latter exception, on which Haden and the company rely in this appeal, does not, however, permit parol evidence that varies or contradicts either the express terms or the implied terms of the written agreement. *Hubacek,* 317 S.W.2d at 31; *Loe v. Murphy,* 611 S.W.2d 449, 451–52 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.); *NHA, Inc. v. Jones,* 500 S.W.2d 940, 944–45 (Tex.Civ.App.-Fort Worth 1973, writ ref'd n.r.e.) (both citing *Hubacek*).

Relying on the "collateral, consistent terms" exception to the parol evidence rule, Haden and the company contend that Haden's affidavit, which describes a separate, unwritten agreement with the law firm for a flat, maximum fee of $10,000, is admissible because Haden refers to "conditions . . . [that] are collateral to the terms of the engagement letter signed by the parties." We agree.

The terms of the August 4, 1997 engagement-letter, as endorsed on August 21, 1997, show that the parties agreed that (1) the law firm would represent Haden and the company in the appeal to the Fifth Circuit, (2) Haden, individually and for the company, acknowledged the law firm's hourly rates, as well as responsibility for

all disbursed expenses, and (3) a $5,000 retainer fee, instead of the $10,000 retainer proposed, would be paid.

But, the engagement-letter contract sheds no light on the very terms that the parties so vigorously dispute, specifically, whether they had agreed to an open account,[8] to be paid as fees accrued and with no ceiling amount, or a flat, maximum fee. Indeed, the engagement-letter contract is equally consistent with either type of fee payment. Because the engagement letter does not clarify whether payments were to be made as accrued or until a flat fee amount was reached—and is equally consistent with either type of payment—the parol evidence rule does not preclude Haden and the company from asserting that, in addition to the recitals in the engagement letter, they had an additional agreement with the law firm for a flat, maximum fee. See Hubacek, 317 S.W.2d at 31; Transit Enter., Inc., 725 S.W.2d at 461; Sherrod v. Bailey, 580 S.W.2d at 29.

Accordingly, our holding that fact issues remain concerning whether the minds of the parties "met" about whether the law firm would bill for its services at an hourly rate, as accrued, or for a flat, maximum fee does not offend the parol evidence rule.

## C. Ratification

 The law firm alternatively contends that Haden and the company cannot assert the flat, maximum fee billing theory because Haden paid the law firm an additional $5,000 after receiving all invoices, which showed a balance due of $35,304.71, and therefore ratified the parties' agreement that the law firm's fees would be paid on an as-accrued, hourly basis.[9] We disagree.

 Ratification of a contract is usually a mixed question of law and fact. *Garcia v. Kastner Farms, Inc.*, 789 S.W.2d 656, 659 (Tex.App.-Corpus Christi 1990, no writ). When evidence concerning ratification is incontrovertible, ratification of a disputed contract is an issue of law for the court. *See id.* But, when the act or acts of ratification are controverted, the trier of fact must determine whether the parties ratified the disputed contract. *See id.* We recognize that, in addition to the $5,000 retainer fee, Haden and the company paid $5,000 to the law firm after receiving all invoices for the work done on the brief. Yet, because fact issues remain concerning whether the parties had agreed that the law firm would collect fees as accrued and on an hourly basis or on a flat, or maximum, fee basis and without regard to hours spent, the trial court could not determine, as a matter of law, that, by paying $5,000 after receiving all of the invoices, Hayden, for the company, acknowledged and therefore ratified, payment on an hourly or accrued basis. Accordingly, we reject the law firm's contention that we should affirm the summary judgment because Haden and the company ratified payment of the law firm's fees on an as-accrued basis on payment of the additional $5,000.

Having thus concluded that fact issues precluded summary judgment on the law firm's claim for breach of contract, we sustain Haden's and the company's second issue.

## Challenge to Section 38.001(8) Attorney's Fees

 In their first issue, Haden and the company challenge whether the law firm

---

8. We emphasize, in this regard, that the law firm abandoned its initial, sworn-account theory of recovery.

9. The law firm relied on the ratification theory in its reply to Haden's and the company's response to the law firm's motion for summary judgment, to rebut their flat, or maximum fee theory.

established its right to summary judgment for the attorney's fees awarded in the trial court's judgment pursuant to subsection (8) of section 38.001 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 1997) (authorizing recovery of attorney's fees for valid claims based on oral or written contract). Well-settled law requires that a party must prevail to recover attorney's fees pursuant to chapter 38. *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997); *Ryan v. Abdel–Salam,* 39 S.W.3d 332, 337 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Our holding that the law firm was not entitled to prevail, because fact issues precluded summary judgment, compels the conclusion that the law firm did not prevail for purposes of chapter 38. *See Ryan,* 39 S.W.3d at 337.

We sustain Haden's and the company's first issue.

### Counterclaims for Breach of Fiduciary Duty, Fraud, and DTPA Violations[10]

In their third issue, Haden and the company contend that the trial court erred by rendering a take-nothing summary judgment for the law firm on Haden's and the company's counterclaims to the law firm's suit to collect its unpaid fee invoices. The trial court rendered this summary judgment before rendering the summary judgment on the unpaid fees addressed above. Haden's and the company's counterclaims allege that the law firm (1) breached its fiduciary duty to Haden and the company, (2) committed fraud, (3) violated the DTPA, and (4) breached the contract with Haden and the company. The grounds

asserted in the law firm's no-evidence motion for summary judgment on the counterclaims included the law firm's contention that it was entitled to judgment as a matter of law because Haden and the company had not incurred any damages on any of their counterclaims.[11] *See* Tex.R. Civ. P. 166a(I).

A summary judgment movant who demonstrates that its opponent cannot prevail on an element of its claim is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Doe v. Boys Clubs,* 907 S.W.2d 472, 477 (Tex.1995); *Gibbs v. Gen. Motors,* 450 S.W.2d 827, 828 (Tex.1970). Accordingly, a law firm that demonstrates that it caused no damages to its former client is entitled to summary judgment as a matter of law. *See Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 25 S.W.3d 863, 874 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Schlager v. Clements,* 939 S.W.2d 183, 186–87 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (both decided in context of legal malpractice claim).

### A. No–Evidence Motion for Summary Judgment

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *See King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex.2003); *Mathis v. RKL Design/Build,* 189 S.W.3d 839, 844 (Tex.App.-Houston [1 Dist.] 2006, no pet.). As the party seeking no-evidence summary judgment in this case, the law firm was required to assert that no evidence existed as to one or more of the

---

10. We address this issue in accordance with *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996).

11. The law firm's motion also included a traditional motion for summary judgment on

Haden and the company's counterclaims. *See* Tex.R. Civ. P. 166a(c). We must affirm, however, if any of the summary judgment grounds are meritorious. *Workers' Comp. Comm'n v. Patient Advocates,* 136 S.W.3d 643, 648 (Tex.2004).

essential elements of Haden's and the company's counterclaims, on which they would have the burden of proof at trial, and also to state specifically the element or elements as to which there was no evidence. *See Johnson v. Brewer and Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002); *Mathis,* 189 S.W.3d at 844; *Flameout Design & Fabrication, Inc.,* 994 S.W.2d at 834.

■ In moving for no-evidence summary judgment, the law firm enumerated each of Haden's and the company's counterclaims, for breach if the DTPA, breach of the fee-agreement contract, fraud, and breach of fiduciary duty, and then listed the elements of each counterclaim.[12] Focusing on the damages element common to each of the counterclaims, the law firm argued that Haden and the company had not incurred the damages required for them to prevail on each of their counterclaims.[13] This showing by the law firm satisfied its initial burden as movant, as stated in rule 166a(i). *See Johnson,* 73 S.W.3d at 207; *Mathis,* 189 S.W.3d at 844; *Flameout Design & Fabrication Inc.,* 994 S.W.2d at 834.

Accordingly, the burden shifted to Haden and the company to provide some evidence, more than a scintilla, to raise a fact issue concerning whether they had incurred the damages required for them to prevail in their counterclaims against the law firm. *See* TEX.R. CIV. P. 166a(i); *Rue-*

*da v. Paschal,* 178 S.W.3d 107, 109 (Tex. App.-Houston [1st Dist.] 2005, no pet.); *Mathis,* 189 S.W.3d at 844. The burden having shifted to Haden and the company, the trial court had a mandatory duty, pursuant to rule 166a(i), to grant the law firm's no-evidence motion for summary judgment unless Haden and the company responded to that motion by producing more than a scintilla of evidence that raised a genuine issue of material fact on the challenged damages elements. *See* TEX.R. CIV. P. 166a(i); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *Rueda v. Paschal,* 178 S.W.3d at 109; *see also Doe,* 907 S.W.2d at 477 (holding that defendant who demonstrates that plaintiff cannot prevail on single, required element of claim for relief is entitled to summary judgment).

■ We will affirm a no-evidence summary judgment when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch,* 118 S.W.3d at 751; *Mathis,* 189 S.W.3d at 844. We review any evidence presented by Haden and the company in the light that favors them, as nonmovants. *See Johnson,* 73 S.W.3d at

---

12. *See* TEX. BUS. & COM.CODE ANN. § 17.50(a) (Vernon Supp.2006–2007) (requiring that defendant's act constitute producing cause of *economic or mental anguish damages* ); *Latham v. Castillo,* 972 S.W.2d 66, 69 (Tex. 1998) (stating elements of claim for unconscionable conduct recovery under DTPA, including *damages* pursuant to section 17.50(a)(3)); *Wright v. Christian & Smith,* 950 S.W.2d 411, 412 (Tex.App.-Houston [1st Dist.] 1997, no writ) (stating elements of breach-of-contract claim, including *damages* arising from breach); *De Santis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990) (stating elements of fraud claim, including *injury* to par-

ty claiming fraud); *Abetter Trucking Co. v. Arizpe,* 113 S.W.3d 503, 508 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (stating elements of breach of fiduciary claim, including *damages* ).

13. An exception arises when the complaining party seeks forfeiture of fees paid to counsel who breaches a fiduciary duty. In that instance, the complaining party need not produce evidence of actual damages. *See Burrow v. Arce,* 997 S.W.2d 229, 240 (Tex.1999). This exception does not apply under the facts of this case.

208; *Rueda*, 178 S.W.3d at 109. If the summary judgment record shows that Haden and the company presented more than a scintilla of probative evidence that raised a genuine issue of material fact on the challenged element, here the damages element required for them to prevail on any of their claims, then the trial court erred by rendering the no-evidence summary judgment and we must reverse. *See Rueda*, 178 S.W.3d at 109.

### B. Challenge to Damages Element Common to All Counterclaims

Haden and the Company asserted counterclaims against the law firm for breach of the DTPA, fraud, breach of fiduciary duty, and breach of contract. In moving for no-evidence summary judgment on the grounds that Haden and the company had not sustained any damages on any of those counterclaims, the law relied on its success in the appeal to the Fifth Circuit, by obtaining a remand for trial on claims that the district court had dismissed. Haden and the company responded by contending that the law firm's success before the Fifth Circuit was irrelevant because they were then

■ sued under a contract [that they] did not make, [and were]

■ *forced to hire an attorney to defend* ... that lawsuit[,] and *may have to pay excess fees* ....

[Emphasis added.]

Haden also provided his affidavit in support of his and the company's response. In the affidavit, Haden elaborated on the two contentions stated above by asserting that the law firm's success in the appeal was irrelevant to their counterclaims for DTPA violations, breach of contract, breach of fiduciary duty, and fraud because Haden and the company had not agreed to the contract that the law firm actually executed, also had to expend funds as attorney's fees to defend the law

firm's breach-of-contract claims, and might yet incur additional fees.

In attempting to avoid the no-evidence summary judgment sought by the law firm on its claim that they could not substantiate the damages required to prevail on any and all of their counterclaims, therefore, Haden and the company relied on the following premises as substantive evidence that they sustained the necessary element of damages for each of their counterclaims:(1) their previously asserted defenses to the law firm's suit for breach of the fee-agreement contract and (2) the attorney's fees and expenses they had to spend to defend this lawsuit or would have to pay if the law firm prevailed.

### A. Previously Asserted Defenses to Contract Claim

■ Concerning the first premise, reliance on previously asserted legal defenses to the law firm's claims for breach of contract did not, as a matter of law, constitute competent summary judgment evidence that Haden and the company sustained damages related to their counterclaims. *See LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 689 (Tex.2006) (applying settled law that legal conclusions, stated without supporting facts in affidavit responding to no-evidence motion for summary judgment, did not constitute competent summary judgment evidence). Accordingly, the legal contentions that reasserted defenses to the law firm's contract action, by which Haden and the company responded to the law firm's no-evidence motion, did not constitute competent, summary-judgment evidence and thus failed to raise any fact issues to substantiate the necessary damages element of any of Haden's and the company's counterclaims.

### B. Attorney's Fees as Actual Damages

■ We next address Haden's and the company's second premise, in which they attempted to substantiate the damages required for them to prevail on their counterclaims, by relying on the fees and expenses they had incurred to defend the law firm's claims for breach of contract in this action and risked incurring in the event the law firm prevailed. Through these assertions, Haden and the company attempted to substantiate the "actual damages" elements of their counterclaims by stating that they incurred or could incur attorney's fees and expenses. The law firm contends that these factual allegations did not constitute competent summary judgment evidence that Haden and the company incurred or would incur recoverable damages from any of the counterclaims that they asserted.

■ Texas law distinguishes between recovery of attorney's fees *as* actual damages and recovery of attorney's fees *incident to* recovery of other actual damages. Pursuant to well-settled law, a party may recover attorney's fees only as provided by statute or by contract. *Gulf States Utilities Co. v. Low,* 79 S.W.3d 561, 567 (Tex. 2002); *see, e.g.,* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (authorizing recovery of attorney's pursuant to written or oral contract). Further, a party is not entitled to an attorney's fees *incident* to recovery unless the party independently recovers actual damages. *Low,* 79 S.W.3d at 567; *see,*

*e.g., Green Int'l, Inc.,* 951 S.W.2d at 390 (holding that a party must prevail on underlying claim for breach of contract in order to be entitled to attorney's fees pursuant to Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8)).

■ Attorney's fees are ordinarily not recoverable, therefore, *as* actual damages in and of themselves. *See Tana Oil & Gas Corp. v. McCall,* 104 S.W.3d 80, 81–82 (Tex.2003) (holding that attorneys, who sought to recover damages based *solely* on value of time and costs incurred in defending claims, had affirmatively precluded themselves of any recovery); *Qwest Communications Int'l, Inc. v. AT & T Corp.,* 114 S.W.3d 15, 32–33 (Tex.App.-Austin 2003), *rev'd in part on other grounds,* 167 S.W.3d 324 (Tex.2005).[14]

The settled prohibition against independent recovery of attorney's fees *as* damages notwithstanding, Haden's and the company's response to the law firm's no-evidence motion relied solely on the attorney's fees and expenses they had sustained in defending this lawsuit and could sustain if the law firm prevailed. Having thus relied on assertions of nonrecoverable damages in attempting to substantiate their claim that they sustained the damages required for them to prevail on their counterclaims, Haden and the company presented a legal barrier to any recovery. *See Tana Oil & Gas Corp.,* 104 S.W.3d at

---

**14.** Under a narrow, "equitable" exception to the rule barring independent recovery of attorney's fees as damages, a party who must sue a third party because of a defendant's tort may recover attorney's fees as a recoverable element of damages. *See Qwest Communications Int'l, Inc. v. AT & T Corp.,* 114 S.W.3d 15, 33 (Tex.App.-Austin 2003), *rev'd in part on other grounds,* 167 S.W.3d 324 (Tex.2005). *see also* Restatement (Second) of Torts § 914(2) (1977) (same). This exception does not apply in this case, which does not involve claims against a third party. The *Qwest* court also lists a second "exception" that permits a

party to recover attorney's fees as damages when the defendant has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See id.* The supreme court has clarified, however, that parties should pursue recovery of attorney's fees for these reasons under the authority of rule 13 of the Rules of Civil Procedure and not as actual damages. *See Tana Oil & Gas Corp. v. McCall,* 104 S.W.3d 80, 83 (Tex.2003) (*citing* Tex.R. Civ. P. 13). Haden and the company have not asserted rule 13 claims and have not alleged the requisite conduct by the law firm.

81–83 (holding that "only damages ... claimed," for value of time spent and costs incurred, precluded recovery even if all other elements of claim proven).

Because the settled prohibition against recovery of attorney's fees *as* actual damages barred the trial court from accepting the only evidence that Haden and the company offered to defeat the law firm's no-evidence motion for summary judgment for lack of evidence of damages, the trial court would have ruled properly by rendering no-evidence summary judgment in favor of the law firm. *See King Ranch,* 118 S.W.3d at 751 (listing among circumstances for properly rendering summary judgment, those instances in which rules of law preclude giving effect to "the only evidence offered to prove a vital fact").

For these reasons, we hold that the trial court properly rendered no-evidence summary judgment in favor of the law firm on Haden's and the company's counterclaims.

We overrule issue three.

## II. Cause No. 01–03–00025–CV

In this cause, Haden and the company challenge attorney's fees awarded to the law firm incident to its obtaining turnover relief, pursuant to section 31.002(e) of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(e). The law firm sought relief pursuant to section 31.002 to enforce the judgment rendered by the trial court on the law's firm's motion for summary judgment. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002. Having reversed the underlying judgment in Cause No. 01–01–00200–CV, we also reverse the subsequent judgment challenged in this cause, which awarded the law firm attorney's fees for enforcing the underlying judgment, pursuant to section 31.002.

## Conclusion

In Cause No. 01–01–00200–CV, except as to the take-nothing summary judgment rendered on Haden's and the company's counterclaims, which we affirm, we reverse the judgment of the trial court and remand the cause for trial of the law firm's breach-of-contract claims. We also reverse the judgment in Cause No. 01–03–00025–CV.

Justice ALCALA, concurring and dissenting.

ELSA ALCALA, Justice, concurring and dissenting.

I respectfully dissent. I would hold that in this breach of contract lawsuit (1) parol evidence is inadmissible, and (2) the written documents establish a meeting of the minds. I concur, however, with the resolution of the counterclaims and agree that the trial court properly granted summary judgment regarding those claims.

## Parol Evidence of Collateral and Contemporaneous Agreement

The undisputed evidence shows that Sacks and Haden entered into a written agreement that provided that the law firm would "assist with the writing of the Appellant's Brief and any reply" and that Haden would pay for the service, at a rate of $200 per hour for Sacks' work, $150 to $200 per hour for work done by other lawyers in the firm, and $50 to $100 per hour for work done by paralegals, plus all costs and expenses. The written agreement included a $5,000 retainer that Haden paid. In his response to the law firm's motion for summary judgment, Haden's affidavit asserts that he never agreed to pay more than $10,000 for the law firm's work on the brief. Haden's affidavit thus attempts to add a material term to the written agreements by claiming that fees were capped at $10,000. Haden's affidavit

is extrinsic or parol evidence because it "tends to prove what is not a term of the contract." *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 31 (1958).

Haden contends that the affidavit is admissible as a prior or contemporaneous agreement that is consistent with the written agreement. Extrinsic evidence of prior or contemporaneous agreements is admissible when the evidence is collateral to an integrated agreement, and is not inconsistent with and does not vary or contradict the express or implied terms or obligations of the written agreement. *Id.* The Texas Supreme Court gave the following example for exclusion of extrinsic evidence of a collateral agreement:

> Suit was against the market [sic] of a promissory note.... The note was secured by a mortgage on 1000 bushels of oats. By way of defense the maker of the note sought to prove an oral agreement that if the oats sold for less than 25 cents per bushel the note was to be credited with the difference. Enforcement of the agreement would have varied the obligation of the maker to pay the full amount of principal of the note. The collateral agreement was properly rejected.

*Id.* at 34. Here, as in the inadmissible collateral agreement concerning the amount of compensation that depended on the price of the sale of a bushel of oats, admission of the extrinsic evidence "would have varied the obligation ... to pay the full amount" due under the terms of the written agreement. *See id.* The full amount due under the terms of the written agreement was approximately $30,000, but the amount due under the purported oral agreement was capped at $10,000. I would hold that Haden's evidence that there was an oral agreement to cap fees at $10,000 is inconsistent with, varies from, and contradicts the terms and obligations of the written agreement. *See id.* at 31.

## Meeting of the Minds

The terms of the written agreement between Haden and Sacks are sufficiently definite that any court reviewing the terms would understand what each promisor agreed to perform. *See T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992). "In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook." *Id.* The material terms of the contract must be agreed upon before a court can enforce the contract. *Id.* "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." *Baroid Equip. Inc. v. Odeco Drilling, Inc.,* 184 S.W.3d 1, 17 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

Here, the written agreement provides that the law firm will assist in the writing of the appellate brief in exchange for payment at the rates designated in the written agreement. The agreement here is sufficiently definite that any court could enforce the terms of the agreement. *See T.O. Stanley Boot Co.,* 847 S.W.2d at 221. Haden agreed to the terms by stating, "I have acknowledged acceptance of the terms of your fee agreement on behalf of Haden & Company and myself...." The written agreement did not limit the scope of the work to be performed by the law firm, nor did it limit the total amount of fees that the law firm could charge for performing the work. I would hold that the written documents show that the parties came to a meeting of the minds that the law firm would "assist with the writing of the Appellant's Brief" and that Haden would pay specified rates per hour for that service. *See Baroid Equip.,* 184 S.W.3d at 17.

### Parol Evidence of Fraud

The majority opinion does not rely on parol evidence of fraud as a basis for reversing the judgment. However, in his motion for rehearing, Haden contends that his affidavit was admissible as parol evidence to prevent fraud because the law firm "might have submitted a bill for two million dollars" and claimed that it spent "five thousand hours writing the fifty page brief." In his affirmative defense of fraud and in his counterclaim for fraud, Haden presented extrinsic evidence that the law firm's billing was excessive by claiming that the law firm did more work than necessary, did inadequate work, and charged more than it should have. Haden, however, never asserted to the trial court or to this Court that the parol evidence was admissible to prove fraud. Haden very clearly asserted a single theory for admission of parol evidence—that parol evidence is admissible as a collateral, contemporaneous agreement. Haden first mentions that parol evidence is admissible to prove fraud in this motion for rehearing. I would further hold that Haden has waived the right to assert that parol evidence is admissible to prevent fraud because he failed to raise that assertion in his original or reply briefs in this appeal. *See Jacobs v. Satterwhite,* 65 S.W.3d 653, 655–56 (Tex.2001) (holding that party waives error by failing to raise issue on appeal).

### Conclusion

Only inadmissible parol evidence supports Haden's challenges to Sacks' breach-of-contract claim. I would overrule Haden's second issue and address the remaining issues in this appeal and in Cause No. 01–03–00025–CV.