IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0472
════════════
 
David J. Sacks, P.C. d/b/a 
Sacks & Associates, Petitioner,
 
v.
 
Charles McIntyre Haden, Jr., 
Individually, and Charles McIntyre Haden, Jr. & Company d/b/a Haden & 
Company, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First District of 
Texas
════════════════════════════════════════════════════
 
 
PER CURIAM
 
 
The question 
in this case is whether a written attorney’s fee agreement that specifies only 
hourly fee rates may be modified by evidence of an oral capping agreement. We 
hold that it may not because parol evidence cannot modify a written agreement 
absent ambiguity. Accordingly, we reverse the court of appeals’ judgment and 
remand the case to the court of appeals for consideration of other issues raised 
on appeal.
Haden & 
Company and its owner, Charles Haden, were involved in a lawsuit that was 
appealed to the federal circuit court of appeals. Haden hired David Sacks as his 
appellate counsel. The parties signed a written engagement letter prepared by 
Sacks. The letter stated the following:
 
I am 
honored to represent you with regard to the above-referenced matter. At this 
point, you have requested that I assist with the writing of the Appellants’ 
Brief and any reply. If oral arguments are granted by the Fifth Circuit, a 
decision will have to be made on who should argue the case.
 
My normal 
rate is $300.00 per hour, but my rate for this particular matter will be $200.00 
per hour. The other lawyers in my firm range from $150.00 to $200.00 per hour, 
and paralegals range from $50.00 to $100.00 per hour. You are responsible for 
all costs and expenses in the case as incurred. These expenses include, but are 
not limited to, copies; binding; fax transmissions; travel; lodging; parking; 
etc.
 
Please 
submit a $10,000 retainer to be applied to fees and expenses.
 
Sacks’s 
signature appears at the close of the letter. Below Sacks’s signature is the 
statement, “Your signature below indicates acceptance of the terms of this fee 
agreement.” The parties later agreed to change the amount of the retainer, and 
the face of the engagement letter shows that Haden signed the agreement, making 
that change by striking through the original $10,000 amount and superscripting 
the amount of $5,000 above the original typewritten numerals in handwriting, 
adding his initials beside that change. Haden forwarded a check for the $5,000 
retainer with a letter, which stated:
 
Pursuant 
to our telephone conversation, enclosed herewith is a check in the amount of 
five thousand dollars ($5,000) to be applied to fees and expenses in assisting 
with the writing of the Appellants’ Brief and reply. Also enclosed is an 
executed copy of your August 4, 1997 letter indicating that I have acknowledged 
acceptance of the terms of your fee agreement on behalf of Haden & Company 
and myself, except that the initial retainer amount has been reduced to $5,000 
per our agreement.
 
Sacks then 
filed a brief on behalf of Haden and his company seeking relief from the trial 
court’s judgment. Sacks sent Haden an invoice for his legal services in the 
amount of $37,259.71, along with a letter stating that, “given the state of the 
record as we were eventually able to retrieve from the Court, putting together 
winning arguments took considerabl[y] more time than I anticipated after giving 
the cursory review of the initial documents.” The letter also said, “We are 
committed to excellence and will generally spend whatever time is necessary to 
develop a winning brief given the state of the record. Sometimes that gets a 
little more expensive than anticipated.”
After Haden’s 
opponent’s responsive brief was received, Sacks prepared and filed Haden’s reply 
brief. Sacks later sent Haden another invoice showing $40,304.71 in total 
charges for both the appellant’s brief and the reply brief, crediting Haden 
$5,000 for the retainer, and requesting payment of the outstanding balance of 
$35,304.71. Haden paid Sacks only an additional $5,000.
Over the next 
two years, Sacks continued to request payment of the remaining amount but Haden 
contested the fees owed, stating that Sacks was only to review the brief already 
drafted by his trial counsel and maintaining that Haden had “made it clear” that 
$5,000 was all he could afford to spend. Sacks disputed Haden’s assertions and 
filed this lawsuit.
The trial 
court rendered a partial summary judgment in favor of Sacks on his breach of 
contract claims, awarding Sacks the fees accrued preparing the briefs for Haden 
plus interest. The trial court also ruled that Sacks was entitled to attorney’s 
fees incurred in pursuing the contract claim, but reserved ruling on the amount 
of reasonable attorney’s fees. In addition, the trial court rendered a 
preliminary take-nothing summary judgment in favor of Sacks on Haden’s 
counterclaims for unconscionable action, fraud, violations of the Deceptive 
Trade Practices Act, breach of fiduciary duty, and breach of contract.
Sacks next 
sought summary judgment on the reasonableness of the attorney’s fees he incurred 
in seeking summary judgment on his breach of contract claim. The trial court 
then rendered a final judgment, which incorporated the earlier ruling on the 
contract claim, and awarded Sacks an additional $75,887.50 for attorney’s fees 
incurred in pursuing his claim on the original fee agreement, with contingent 
fees totaling $45,000 for appeals to an intermediate appellate court and for 
filing a petition for review in this Court. 
Reviewing the 
trial court’s grant of summary judgment, the court of appeals initially 
unanimously affirmed. On rehearing, the court reversed the trial court in a 2-1 
decision, holding that a fact question existed with respect to whether there was 
a meeting of the minds between the parties when they entered into the fee 
agreement. 222 S.W.3d 580, 590–91 (Tex. App.—Houston [1st Dist.] 2007). Because 
the agreement did not explicitly state whether the parties had agreed to an open 
account or a flat, maximum fee, the court of appeals concluded that Haden’s 
evidence of an oral agreement to cap the attorney’s fees at $10,000 was 
admissible as a defense to Sacks’s claim under the collateral and consistent 
exception to the parol evidence rule. Id. at 592–93.
The court of 
appeals raised meeting of the minds sua sponte, concluding that in the absence 
of a clear statement identifying the fee agreement as an open account, a 
question of fact was raised as to whether “the minds of the parties ‘met’ on the 
crucial obligation.” Id. at 591. A meeting of the minds is necessary to 
form a binding contract. E.g., Hathaway v. General Mills, Inc., 
711 S.W.2d 227, 228 (Tex. 1986). However, the absence of a fixed total price for 
services does not indicate a failure of the parties to reach a meeting of the 
minds with regard to the essential terms of the contract. See Haws & 
Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co., 480 S.W.2d 607, 
609 (Tex. 1972); Buxani v. Nussbaum, 940 S.W.2d 350, 352–53 (Tex. 
App.—San Antonio 1997, no pet.). “Where the parties have done everything else 
necessary to make a binding agreement for the sale of goods or services, their 
failure to specify the price does not leave the contract so incomplete that it 
cannot be enforced. In such a case it will be presumed that a reasonable price 
was intended.” Bendalin v. Delgado, 406 S.W.2d 897, 900 (Tex. 1966); 
see also Burnside Air Conditioning & Heating, Inc. v. T.S. Young Corp., 
113 S.W.3d 889, 894–95 (Tex. App.—Dallas 2003, no pet.); Buxani, 940 
S.W.2d at 353; Pennington v. Gurkoff, 899 S.W.2d 767, 770 (Tex. App.—Fort 
Worth 1995, writ denied). Though Sacks did not specify an exact total price for 
his services, the specified hourly rates confirm that the parties agreed that 
Sacks would charge and Haden would pay a reasonable price. The contract was 
explicit as to the services to be rendered and the manner that would be used in 
determining the price, and was therefore sufficiently clear to demonstrate a 
meeting of the minds between the parties as to all essential terms of the 
contract.
An 
unambiguous contract will be enforced as written, and parol evidence will not be 
received for the purpose of creating an ambiguity or to give the contract a 
meaning different from that which its language imports. Universal C.I.T. 
Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951). Only where a 
contract is ambiguous may a court consider the parties’ interpretation and 
“admit extraneous evidence to determine the true meaning of the instrument.” 
Nat’l Union Fire Ins. Co. of Pittsburgh, Penn. v. CBI Indus., Inc., 907 
S.W.2d 517, 520 (Tex. 1995) (per curiam). “Whether a contract is ambiguous is a 
question of law that must be decided by examining the contract as a whole in 
light of the circumstances present when the contract was entered.” Columbia 
Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 
(Tex. 1996). The plain language of the engagement letter demonstrates that Haden 
agreed to pay Sacks an hourly fee, and that no cap on fees was set. Haden argues 
that a fee agreement must specifically state that hourly fees will accrue 
without limit in order for the agreement to be unambiguous and enforceable. But 
the lack of such explicit language is irrelevant if the agreement can be 
reasonably interpreted only one way. See class=Section2> 
id. at 
591. We have never held that an open-ended hourly fee agreement will be enforced 
only if it expressly states there is no cap on fees, and we decline to do so 
now. If a contract is unambiguous, the parol evidence rule precludes 
consideration of evidence of prior or contemporaneous agreements unless an 
exception to the parol evidence rule applies. See Hubacek v. Ennis State 
Bank, 317 S.W.2d 30, 31 (Tex. 1958).
Haden argues 
that the collateral and consistent exception applies. Under the exception, parol 
evidence can be used to demonstrate a prior or contemporaneous agreement that is 
both collateral to and consistent with a binding agreement, and that does not 
vary or contradict the agreement’s express or implied terms or obligations. 
Id. But “[a] previous or simultaneous agreement to alter the fee agreed 
upon in a written contract is in conflict with the written contract and not 
merely collateral to it.” Lakeway Co. v. Leon Howard, Inc., 585 S.W.2d 
660, 662 (Tex. 1979) (per curiam); see also Rincones v. Windberg, 
705 S.W.2d 846, 849 (Tex. App.—Austin 1986, no writ) (“It is a fair conclusion, 
we think, that the parol evidence rule prohibits the admission of oral evidence 
which alters the payment terms of a written contract.”). The evidence offered by 
Haden would alter the written fee agreement, and is therefore not admissible 
under the collateral and consistent exception to the parol evidence rule. 
The court of 
appeals erred in holding that there was no meeting of the minds necessary to 
form a binding contract, and erred in holding that the parol evidence rule did 
not bar Haden’s evidence of an oral agreement to cap fees. Accordingly, we grant 
Sacks’s petition for review and, without hearing oral argument, see Tex. R. App. P. 59.1, reverse the court 
of appeals’ judgment and render judgment that the trial court’s judgment with 
respect to the admissibility of parol evidence be reinstated. We remand the case 
to the court of appeals for consideration of other issues raised on appeal.
 
OPINION DELIVERED: September 26, 2008