

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00173-CV

———————————————

CARL O'NEAL AND SOS ENERGY SERVICES, LLC, Appellants

V.

FRANK DALE, Appellee

On Appeal from the 342nd District Court
Tarrant County, Texas
Trial Court No. 342-300995-18

Before Birdwell, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

In four issues, Appellants Carl O'Neal[1] and SOS Energy Services, LLC challenge the trial court's venue and summary-judgment rulings, as well as the findings made after a bench trial and the judgment predicated on those findings that awarded damages to Appellee Frank Dale. The issues that Appellants raise and our reasons for overruling them are as follows:

- Appellants' first issue challenges the trial court's failure to transfer this case to a more convenient venue. That ruling is not subject to appellate review.

- Carl's first issue[2] raises factual sufficiency challenges to the trial court's damage award, claiming that the trial court failed to credit evidence that undermines the award. This issue is a disagreement with the trial court's credibility determinations. The applicable standards of review prohibit us from reappraising those determinations.

---

[1]Throughout the remainder of the opinion (other than in some block quotes), we refer to Carl O'Neal by his first name to avoid confusion because Carl's son, Colin O'Neal, was also a party to the suit and testified at trial.

[2]The second and third issues in Appellants' brief appear to challenge only the damage award against Carl and not the one against SOS. We therefore treat these as Carl's first and second issues.

- Carl's second issue raises challenges to the evidence that the trial court relied on to support its damage award. Carl has waived the issue both by inadequate briefing and by failing to object to the challenged evidence at trial. Finally, the subsidiary arguments that Carl raises in this issue also constitute an unreviewable disagreement with the trial court's credibility determinations or are not borne out by the record.

- Appellants' second issue challenges the trial court's granting of a no-evidence motion for summary judgment that determined that they should take nothing on their counterclaim for breach of contract against Dale. Because Appellants failed to respond to the motion with any evidence of a viable measure of damages, the trial court properly granted the summary-judgment motion.

Thus, we affirm the trial court's judgment.

## II. Factual and procedural background

The trial court made findings of fact and conclusions of law. Carl challenges only a portion of the one finding that sets the value of the property that underlies Dale's damage claim. Because the findings are mostly unchallenged and because they do an efficient job of describing the background of the controversy, we quote them in their entirety (with the exception of one finding that deals with attorney's fees):

1. Frank Dale, Carl O'Neal, and Colin O'Neal were members of SOS Energy Services, LLC ("SOS"). Carl O'Neal was responsible for the

day-to-day operations of SOS. Carl O'Neal also had possession of, and control over, the vehicles and other equipment of SOS.

2. On or about June 22, 2016, SOS executed a promissory note (the "Note") in favor of Happy State Bank ("[Happy Bank]"). Dale and the O'Neals executed guaranty agreements under which they each guaranteed SOS's performance of its obligations under the Note.

3. SOS subsequently defaulted on the Note.

4. On May 22, 2017, [Happy Bank] filed suit against Dale and the O'Neals (the "Guaranty Lawsuit"). [Happy Bank] alleged that Dale and the O'Neals were jointly and severally liable to [Happy Bank] for the amounts owed by SOS under the Note based upon the guaranty agreements signed by each of them. Carl O'Neal and Colin O'Neal are referred to collectively herein as "the O'Neals[."]

5. Dale filed an answer to [Happy Bank]'s claims[] and also asserted cross-claims against both Carl O'Neal and Colin O'Neal.

6. On April 18, 2018, [Happy Bank], Dale, and the O'Neals participated in mediation in the Guaranty Lawsuit. At the conclusion of the mediation, the parties entered into a Mediated Settlement Agreement (the "Settlement Agreement"). Under the terms of the Settlement Agreement, Dale agreed to pay [Happy Bank] the sum of $180,000.00 pursuant to his guaranty agreement (the "Guaranty Payment"). The O'Neals agreed that SOS would relinquish to Dale the equipment of SOS in its possession.

7. Dale paid the Guaranty Payment to [Happy Bank] in full. Dale also dismissed his cross[-]claims against the O'Neals.

8. SOS had possession of equipment worth hundreds of thousands of dollars. The equipment in the possession of SOS included vehicles, trailers, generators, pipe threaders, pressure washers, fusing machines, and miscellaneous tools and other equipment. Carl O'Neal[—]a managing member of SOS[—]had possession of, and control over, the equipment in the possession of SOS.

9. Other than two stripped-down trucks, the O'Neals and SOS did not relinquish any equipment of SOS to Dale as agreed to in the

4

Settlement Agreement. The fair market value of the equipment that the O'Neals and SOS failed to relinquish to Dale is $264,461.00.

10. Carl O'Neal admitted that he has possession of equipment of SOS[—]including a Nitro power washer and miscellaneous tools[—]that he did not turn over to Dale as agreed in the Settlement Agreement.

11. Carl O'Neal claimed that certain vehicles owned by SOS were returned to the seller and/or sold to third parties[] and that proceeds from such sales or other dispositions were paid directly to [Happy Bank] or paid by SOS to [Happy Bank] and applied to the amounts due on the Note. Carl O'Neal presented no documentary evidence of any such sale or other disposition[] or of any proceeds from any such sale or other disposition being received by SOS, paid to [Happy Bank], or applied to the amounts due on the Note.

Predicated on the quoted findings, the trial court concluded that Carl owed a fiduciary duty to Dale, and that duty obliged Carl "to explain any loss or disappearance of the equipment that was in his possession or subject to his control." The trial court then concluded that Carl's failure to relinquish or to cause SOS's failure to relinquish the equipment that SOS possessed breached the settlement agreement entered into at the mediation, violated a promise to deliver the equipment that it would be unjust for Carl to avoid, converted equipment that Dale was entitled to possess, and demonstrated that Carl's representation—that he would deliver the equipment—was fraudulent.

Predicated on its findings and conclusions, the trial court entered judgment that Dale recover $264,461 from Carl and $180,000 from SOS.

To give context to the issues raised by Appellants, we augment the background provided by the findings to elaborate on two additional matters: (1) the evidence

5

offered to support Dale's damage claim; and (2) a summary judgment entered by the trial court dismissing a counterclaim filed by Appellants against Dale.

With respect to Dale's damage claim, Dale introduced an exhibit that cataloged equipment that had been purchased by SOS. Dale formulated the list of equipment contained in the exhibit through draw requests made by SOS to Happy Bank for the equipment's purchase and a list of items for which SOS carried insurance. On the exhibit, Dale highlighted the items that Happy Bank had delivered to him as it was required to do by the settlement agreement entered into at the mediation, equipment that Happy Bank had repossessed and had sold prior to the mediation, and the two stripped-down trucks that Carl had delivered to Dale after the mediation (which are referenced in finding 9 that is quoted above). In essence, Dale argued that he had carried his burden of proof to show what equipment SOS had possessed at the time of the execution of the settlement agreement based on evidence showing what equipment the company had purchased or insured and which had not been repossessed by Happy Bank. Dale asked the trial court to draw the inference that the equipment purchased by SOS that was not shown to have been in the possession of Happy Bank remained in the possession of SOS at the time of the mediation.

With the inference in place that the equipment remained in the possession of SOS, Dale argued that Carl had the burden to account for the equipment's disposal prior to the execution of the settlement agreement. For anything other than the stripped-down trucks that Carl had delivered to Dale after the mediation, Dale argued

6

that Carl's testimony did not credibly explain what had happened to the equipment that SOS presumably possessed. Thus, Dale argued that there was evidence that Carl had breached the obligation created by the settlement agreement to deliver all the equipment that remained in the possession of SOS to Dale. Dale quantified his damages by offering his opinions as to the fair market value of the undelivered equipment. Dale relied on his experience in dealing with used vehicles in his other business endeavors and on internet research to support his opinions of the fair market value of the undelivered equipment. The trial court accepted Dale's opinions and assessed damages in accordance with them.

With respect to the summary judgment, Appellants filed a counterclaim asserting that Dale had breached the settlement agreement by bringing this suit against them. Dale filed a no-evidence motion for summary judgment on the elements of whether Dale had breached the settlement agreement and of whether Appellants had incurred damages. The trial court granted the motion and entered judgment that Appellants take nothing on their counterclaim.

### III. Analysis

#### A. Appellants' first issue

In their first issue, Appellants argue that the trial court erred by failing to grant their motion to transfer venue (1) to Gray County based primarily on the facts that SOS was headquartered in that county and that the evidence and witnesses germane to the suit were located there or (2) to Potter County based on the fact that the Happy

7

Bank Guaranty Lawsuit was mediated in that county. Appellants' first issue's argument goes on at length explaining how the trial court failed to properly apply the standards of Section 15.002(b) of the Civil Practice and Remedies Code, which permits a transfer based on the convenience of the parties and witnesses. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(b).

But Appellants ignore that a convenience transfer is not reviewable by appeal. Subsection (c) of Section 15.002 provides that "[a] court's ruling or decision to grant or deny a transfer under Subsection (b) is not grounds for appeal or mandamus and is not reversible error." *See id.* § 15.002(c). The Texas Supreme Court, this court, and another intermediate appellate court have held that the grant or denial of a motion based on Section 15.002(b) is not reviewable on appeal. *See Garza v. Garcia*, 137 S.W.3d 36, 39 (Tex. 2004); *Cunningham v. Zurich Am. Ins. Co.*, 352 S.W.3d 519, 535 (Tex. App.—Fort Worth 2011, pet. denied); *see also Tukua Invs., LLC v. Spenst*, 413 S.W.3d 786, 795 (Tex. App.—El Paso 2013, pet. denied).

In their reply brief, Appellants switch gears and appear to argue that we can review the order denying a motion for a convenience transfer when the trial court fails to enter specific findings on the three issues that a trial court should consider in deciding that motion.[3] Section 15.002(b) does not require findings; thus, the absence

[3]Subsection (b) provides,

For the convenience of the parties and witnesses and in the interest of justice, a court may transfer an action from a county of proper venue

8

of findings in an order under this subsection does not invalidate the order or open it to appellate review.

Indeed, the Texarkana Court of Appeals rejected the very argument that Appellants make:

> Pentex contends that, because the transfer order did not include certain findings required under Section 15.002(b) of the Texas Civil Practice and Remedies Code, the order is invalid and failed to affect a transfer of the matter to Tarrant County. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(b) . . . . This section of the Code permits a transfer where the court finds certain facts exist. The Texas Civil Practice and Remedies Code does not explicitly require the findings to be set out in the order, and Pentex cites no authority to support the proposition that omission of findings from the order renders the order invalid. *Cf. Garza*[, 137 S.W.3d at 38–39] (where motion asserts both improper venue and inconvenience, and trial court grants motion without specifying grounds, court may presume order was granted on convenience grounds).

*In re Gibbs*, No. 06-15-00002-CV, 2015 WL 400468, at *3 (Tex. App.—Texarkana Jan. 30, 2015, orig. proceeding) (mem. op.). We agree with the Texarkana court that

---

> under this subchapter or Subchapter C to any other county of proper venue on motion of a defendant filed and served concurrently with or before the filing of the answer, where the court finds:
>
> > (1) maintenance of the action in the county of suit would work an injustice to the movant considering the movant's economic and personal hardship;
> >
> > (2) the balance of interests of all the parties predominates in favor of the action being brought in the other county; and
> >
> > (3) the transfer of the action would not work an injustice to any other party.

Tex. Civ. Prac. & Rem. Code Ann. § 15.002(b).

9

the language of Subsection (b) does not require findings, and Appellants have cited us to no case that invalidates an order disposing of a motion seeking a convenience transfer because it lacks findings.

We therefore overrule Appellants' first issue challenging the denial of their motion to transfer venue.

## B.    Carl's first issue

In his first issue, Carl raises a factual-sufficiency challenge to the trial court's finding that "[o]ther than two stripped-down trucks, the O'Neals and SOS did not relinquish any equipment of SOS to Dale as agreed to in the Settlement Agreement. The fair market value of the equipment that the O'Neals and SOS failed to relinquish to Dale is $264,461.00." He also challenges the trial court's conclusions that Carl's actions caused damages to Dale in the amount specified in the quoted finding. The basis for the challenge in Carl's first issue is that Dale had previously agreed that Carl could sell certain vehicles upon which he based his damage calculation, and for this reason, the damage award improperly included equipment that Carl no longer had possession of when the settlement agreement was executed.

The challenge fails. The agreement to sell the equipment related to an arrangement to downsize SOS, but Dale never received any proof that the equipment had been sold pursuant to the agreement. And the question before the trial court was not whether Dale might have agreed to the sale of equipment on a prior occasion but whether Carl still had possession of that equipment when he later agreed to deliver all

10

of SOS's equipment in his possession to Dale. The latter question presented a factual issue that the trial court resolved adversely to Carl. The factual-sufficiency standards of review that we apply require that we defer to the trial court's resolution of the issue.

In reviewing the trial court's findings, we apply the same standards of review as we would to a jury finding. *Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 257 (Tex. App.—Fort Worth 2018, no pet.). We review conclusions of law de novo. *Id.* at 258.

How we review the factual sufficiency of the evidence also turns on which party bore the burden of proof at trial:

> If a party is attacking the factual sufficiency of an adverse finding on an issue to which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. In reviewing an insufficiency[-]of[-]the[-]evidence challenge, the court of appeals must first consider, weigh, and examine all of the evidence that supports and that is contrary to the jury's determination. A court must sustain an insufficient evidence point when the "evidence adduced to support the vital fact, even if it is the *only* evidence adduced on an issue, is factually too weak alone to support it." The court sets aside the judgment if the evidence is so weak "as to be clearly wrong and unjust."

W. Wendell Hall & Ryan G. Anderson, *Standards of Review in Texas*, 50 St. Mary's L.J. 1099, 1134–35 (2019) (footnotes omitted).

On the other side of the coin, a party who had the burden of proof on the issues is subject to the following standard:

11

> If a party is challenging a jury finding regarding an issue upon which that party had the burden of proof, the complaining party must demonstrate that "the adverse finding is against the great weight and preponderance of the evidence." In reviewing a challenge that the jury finding is against the "great weight and preponderance of the evidence," the court of appeals must first examine the record to determine if there is some evidence to support the finding. If such is the case, then the court of appeals must determine, in light of the entire record, whether "the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or if the great preponderance of the evidence supports its non-existence." Whether the great weight challenge is to a finding or a nonfinding, "[a] court of appeals may reverse and remand a case for [a] new trial [only] if it concludes that the jury's 'failure to find' is against the great weight and preponderance of the evidence."

*Id.* at 1135–36 (footnotes omitted).

And in conducting a factual-sufficiency review, we must defer to the credibility determinations of the trial court:

> In a bench trial, the trial court acts as the factfinder and is the sole judge of the credibility of witnesses. The trial court determines the weight of testimony, and it resolves conflicts and inconsistencies in the testimony. If the evidence is subject to reasonable disagreement, this court will not reverse the judgment of [the] trial court.

*S-G Owners Ass'n, Inc. v. Sifuentes*, 562 S.W.3d 614, 620 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (citations omitted).

We outline how the factual sufficiency standards are different depending on who bears the burden of proof because Dale argues that Carl bore the burden to prove that he no longer possessed the equipment, and we are unsure that this proposition is correct. Dale predicates his argument on the principle that Carl (as managing member of SOS) owed Dale (as another member of the LLC) a fiduciary

12

duty. *See Cardwell v. Gurley*, No. 05-09-01068-CV, 2018 WL 3454800, at *4–5 (Tex. App.—Dallas July 18, 2018, pet. denied) (mem. op.) (assuming that Texas Limited Liability Company Act creates fiduciary duties). With a fiduciary duty in place, Dale argues that Carl bore the burden of proof to account for the loss or value of assets once traced into his possession. *See Sierad v. Barnett*, 164 S.W.3d 471, 480 (Tex. App.—Dallas 2005, no pet.).

We see the burden of proof issue slightly differently, with Carl bearing only the burden of production after Dale made a prima facie case that the equipment was in Carl's possession. As a commentator on evidence has noted, "Case law has defined the term 'prima facie evidence' as 'evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue.' . . . Once a prima facie case has been made, the burden of production shifts to the opponent." Linda L. Addison, *Texas Practice Guide: Evidence* § 3:41 (Dec. 2020 Update). In circumstances similar to this, courts require a party to rebut a presumption that the party holds assets once the assets have been traced into the party's possession. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (discussing that under the turnover statute, the presumption of possession arises when property is traced into party's possession and that party then has the burden to account).

Whether Carl bore the burden of proof or the burden of production, we reject the claim that the trial court's findings are either clearly wrong and unjust or against the great weight and preponderance of the evidence. Whatever the nuances of the

13

standard, Carl's argument is an attempt to have us perform a role that we do not have—second-guessing the trial court's credibility determinations.

A host of factors demonstrate that the trial court acted well within its powers to make credibility determinations when it rejected Carl's claim that he had acted on an authorization from Dale to sell several vehicles:

- The agreement that Carl claims authorized him to sell various vehicles was made in conjunction with the agreement to downsize SOS, but there was an open question regarding whether that agreement was ever acted on.

- Whether Carl actually sold any vehicles pursuant to the agreement before he executed the settlement agreement presented a question of his credibility. Time after time, when asked whether he could document the sale of SOS's equipment, Carl claimed that he had the documentation but had not brought it to court. Nor did he explain why he had not produced in discovery the documents showing the sales that had occurred.

- Carl failed to document that any funds generated by any alleged vehicle sales were used to pay down the Happy Bank note.

The disconnect in Carl's argument is that whether there was an agreement by Dale that Carl could sell equipment as part of the company's downsizing is relevant only if Carl acted on that agreement before the second commitment arose that SOS would turn over to Dale all the equipment in its possession at the time of the execution of the settlement agreement. To prove that he had acted on the prior

agreement, Carl asked the trial court to take his word that the equipment had been disposed of before the second commitment arose. The trial court decided that it would not take his word, and the applicable standards of review do not empower us to revisit the trial court's determination. Accordingly, we overrule Carl's first issue.

## C.  Carl's second issue

Carl's second issue is a free-ranging challenge to the evidence supporting the trial court's damage finding. We interpret Carl's argument as primarily challenging the testimony offered by Dale to establish the fair market value of the equipment that he claims that he should have received. Carl also raises subsidiary arguments that the evidence conclusively established that the trial court included equipment in its damage calculation that (1) had been stolen before Carl executed the settlement agreement; (2) Dale had agreed could be sold; and (3) had been purchased by and belonged to a company other than SOS. We overrule Carl's second issue because (1) he waived it by inadequate briefing; (2) he failed to preserve his claim of error because he made no objection to Dale's opinion testimony in the trial court; (3) for his subsidiary arguments, he once again asked us to step outside our role as an appellate court to make credibility determinations; and (4) the record does not bear out his contentions.

With respect to Dale's valuation testimony, Dale listed himself prior to trial as a potential expert witness on valuation. The record contains Dale's pretrial witness list that describes the areas of his testimony as follows: "Mr. Dale will testify primarily as a fact witness. Mr. Dale may, however, also provide expert testimony regarding the

15

fair market value of the equipment of SOS . . . ." The record contains no pretrial challenge to Dale's testifying as an expert.

The exhibit containing the values that Dale placed on the various items of equipment was admitted without objection. During his trial testimony, Dale described the methodology that he had used to determine the values that are shown on the exhibit. That testimony drew no objection.

In the face of this record, Carl requests that we conduct a "de novo" review of the trial court's finding. The full extent of his legal argument is as follows: "Ordinarily, market value is established through expert testimony. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 851–52 (Tex. 2011). There was no expert testimony in this case." After this statement, Appellants' brief points out that Carl and Colin testified that they did not agree with Dale's value opinions and that Carl testified to the various ways that equipment had been disposed of or had come to no longer be in his possession.

We will elaborate on why we overrule the present issue. First, Carl waived error by inadequately briefing his argument. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). As the quote in the preceding paragraph demonstrates, Carl's legal argument consists of a citation to one case and his conclusory statement that there was no expert testimony in this case. Carl's

16

superficial approach to briefing is inadequate.[4]  Essentially, Carl leaves it up to us to

brief his issue; we have no duty to do so.  *See Huey v. Huey*, 200 S.W.3d 851, 854 (Tex.

App.—Dallas 2006, no pet.).  Because Carl's argument is inadequately briefed, it is

waived.  *See Jackson v. Vaughn*, 546 S.W.3d 913, 922 (Tex. App.—Amarillo 2018, no

pet.).

Even if Carl had not waived his issue through inadequate briefing, he forfeited

it by failing to object to Dale's testimony at trial.  Carl was forewarned that Dale

would offer expert opinions.  At trial, Dale outlined his methodology in reaching his

opinions, which were clearly intended to be those of an expert witness because he

based them on his knowledge, skill, and experience.  *See* Tex. R. Evid. 702 ("A witness

who is qualified as an expert by knowledge, skill, [or] experience . . . may testify in the

form of an opinion or otherwise if the expert's scientific, technical, or other

---

[4]With regard to what an appellant must include in his brief, case law states that

> an appellant must provide such a discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).  "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Id.*  Appellate courts must construe briefing requirements reasonably and liberally, but a party asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law support his contention. *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

*Gonzalez v. VATR Constr. LLC*, 418 S.W.3d 777, 784 (Tex. App.—Dallas 2013, no pet.).

17

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.").

On appeal, Carl claims that Dale's valuation methodologies were flawed. But Carl did not make this objection at trial and thus has failed to preserve error on this claim. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004) ("[W]hen a reliability challenge requires the court to evaluate the underlying methodology, technique, or foundational data used by the expert, an objection must be timely made so that the trial court has the opportunity to conduct this analysis."); *see also City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009) ("When a scientific opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable.").

Next, Carl raises subsidiary arguments claiming that the trial court's damage award includes equipment that the record shows had been disposed of before the execution of the settlement agreement or that was never SOS's property. We address and reject these arguments for the following reasons:

- Carl notes that he introduced a police report showing that a vehicle owned by SOS had been stolen and stripped of equipment, and for that reason, the equipment stripped from the vehicle should not have been included in the damage award. Carl testified that he was the one who had made the police report about the stolen vehicle. If we understand the argument, Carl contends that the testimony about the theft was undisputed and that the trial court was

18

bound to accept it. We disagree. As the Texas Supreme Court has held, even undisputed testimony is seldom conclusive. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) ("Undisputed evidence and conclusive evidence are not the same—undisputed evidence may or may not be conclusive, and conclusive evidence may or may not be undisputed."). We have outlined why Carl's testimony presented credibility issues to the trial court; thus, the trial court was not bound to accept Carl's version of the events.

- Carl asserts that Dale had agreed to the sale of certain equipment. We have addressed that argument in response to Carl's second issue.

- If we understand Carl's remaining argument, it is that an invoice for certain equipment shows that it was purchased by an entity named CRL, not SOS, and that we should conclude that this demonstrates that SOS never had possession of that equipment. This argument has no support in the record. Dale explained the presence of CRL's name on the invoice; it was a "quote" for tools that were apparently purchased by SOS *from* CRL. Dale testified as follows:

> Q. With regard to the tools that you had mentioned, I want to say, in 26, 27, 29 and 31, with the equipment attached, were those all brand new, or were some of those tools bought used off of the Internet?
>
> A. I understood them to be all brand new from this quote that we got from this CRL Pump & Supply place.

Carl himself described documentation from CRL as "quote sheets" for tools that were purchased by SOS. Carl testified as follows:

> Q. And this is the quote sheet from CRL Pump & Supply. Do you see that?
>
> A. Yes, sure do.
>
> Q. Now, this -- the tools on this quote were funded by the bank four times; is that correct?
>
> A. That's correct.

If Carl wants us to conclude that the presence of CRL's name on an invoice means that CRL rather than SOS purchased the tools, the quoted testimony demonstrates the invalidity of that argument. Accordingly, we overrule Carl's second issue.

### D. Appellants' second issue

In their second joint issue, Appellants challenge a no-evidence summary judgment granted by the trial court decreeing that they were to take nothing on the breach-of-contract counterclaim that they had filed against Dale. The trial court properly granted summary judgment because Appellants' response offered no evidence of damages to support a breach-of-contract claim.

Appellants' amended counterclaim against Dale alleged that

> Counter-Defendant, **DALE**, has breached the express terms of the MSA attached . . . as Exhibit "B" hereto. In the MSA, **DALE**, expressly released "any and all claims that" he may have against Happy [] Bank, **CARL O'NEAL, COLIN O'NEAL**[,] and **SOS ENERGY SERVICES, LLC. DALE** had actual and/or apparent knowledge of equipment in possession of Happy [] Bank, **CARL O'NEAL, COLIN O'NEAL**[,] and/or **SOS ENERGY SERVICES, LLC** at the time of

the mediation conducted in the underlying lawsuit attached hereto as Exhibit "A." **DALE** knew or should have known or had the opportunity to list out any equipment the subject of the MSA at the time of his execution of the MSA. **DALE** knew or should have known at the time he voluntarily entered into the MSA that Happy [] Bank had liquidated all equipment that **SOS ENERGY SERVICES, LLC** had that could be sold to reduce the debt on the note by **SOS ENERGY SERVICES, LLC** to Happy [] Bank.

The counterclaim pleaded that the damages that Appellants had incurred were based on their having "to obtain counsel to defend this baseless action."

Dale moved for a no-evidence summary judgment on the ground that "there is no evidence that [he had] breached the settlement agreement or that any such breach [had] caused any damages to Carl O'Neal or SOS." Appellants' response to Dale's motion alleged the same type of damages they had originally pleaded for: "[Appellants] have incurred damages as a result of seeking necessary counsel to defend the claims asserted in [Dale]'s Original Petition and a copy of [Appellants'] employment agreement with The Warner Law Firm has been attached hereto as Exhibit 'E.'" The trial court granted Dale's motion.

Our court recently delineated the standards that we apply to the review of such a judgment as follows:

> We review a no-evidence summary judgment [under Texas Rule of Civil Procedure 166a(i)] de novo. *See Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their

21

conclusions. *Hamilton* [*v. Wilson*], 249 S.W.3d [425,] 426 [(Tex. 2008)] (citing *City of Keller*[, 168 S.W.3d at 822]). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*[*, Inc. v. Gish*], 286 S.W.3d [306,] 310 [(Tex. 2009)] (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

*Shaw v. Wells Fargo Bank*, No. 02-20-00011-CV, 2020 WL 5241188, at *1 (Tex. App.—Fort Worth Sept. 3, 2020, no pet.) (mem. op.).

Appellants' argument on appeal is that a fact question prevented the entry of summary judgment because the parties never came to a meeting of the minds about what equipment the settlement agreement obligated Carl to deliver to Dale. As Carl poses the nature of the controversy, Dale believed that he would receive the equipment that he claimed was in SOS's possession and that was listed in the exhibit that he had introduced at trial, and Carl believed that Dale would receive only the two truck shells, which Carl subsequently delivered. Based on these differing views, Carl believed that the trial court erred by granting summary judgment and that "[t]he trial court's granting of partial summary judgment on this issue was harmful to the **O'NEALS** and basically did not allow them their day in court on that issue."

This argument is wide of the mark as an attack on the trial court's summary judgment. The issue involved in the trial court's summary-judgment ruling was different from whether Dale had a viable breach-of-contract claim; the summary-

judgment issue involved whether Appellants had a breach-of-contract claim against Dale for his act of filing suit against them for breach of contract. The trial court properly granted summary judgment because Appellants brought forward no evidence that they had incurred damages as a result of Dale's alleged breach of contract.

Appellants claimed damages because they had incurred attorney's fees to defend against Dale's claim. But a party's claim that he incurred attorney's fees to defend against a breach-of-contract claim is not a viable damage claim. The Austin Court of Appeals aptly summarized this principle and the cases establishing that principle as follows:

> "Courts have long distinguished attorney's fees from damages." *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013) (orig. proceeding) (citations omitted); *see also Haubold v. Med*[.] *Carbon Research Inst., LLC*, No. 03-11-00115-CV, 2014 WL 1018008, at *6 (Tex. App.—Austin Mar. 14, 2014, no pet.) (mem. op.) ("'Texas law distinguishes between recovery of attorney's fees as actual damages and recovery of attorney's fees incident to recovery of other actual damages.'" (quoting *Haden v. David J. Sacks, P.C.*, 222 S.W.3d 580, 597 (Tex. App.—Houston [1st Dist.] 2007), *rev'd in part on other grounds*, 263 S.W.3d 919 (Tex. 2008) (per curiam))). Attorney's fees are generally not recoverable as damages in and of themselves. *Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 81 (Tex. 2003). "Texas has long followed the 'American Rule' prohibiting [attorney's] fee awards unless specifically provided by contract or [by] statute." *MBM Fin. Corp. v. The Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006)).

*Landmark Dividend LLC v. Hickory Pass L.P.*, No. 03-16-00002-CV, 2017 WL 5560082, at *2 (Tex. App.—Austin Nov. 17, 2017, no pet.) (mem. op.); *see also Dall. Area Rapid Transit v. Amalgamated Transit Union Local No. 1338*, No. 05-17-01051-CV, 2018 WL

23

6187590, at *1 (Tex. App.—Dallas Nov. 27, 2018, no pet.) (mem. op.) (noting rule that attorney's fees are not recoverable as damages unless suit is one by attorney to recover fees from client or a malpractice suit against attorney).

Because Appellants' argument ignores the basis for the trial court's grant of summary judgment, it offers no valid challenge to that ruling. Accordingly, we overrule Appellants' second issue.

## IV. Conclusion

Having reviewed and overruled each of the issues raised by Appellants jointly and by Carl individually, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: January 21, 2021